Irving COHEN, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 87–0265–CIV.

United States District Court,
S.D. Florida.

April 18, 1996.

Irving Cohen, Boca Raton, FL, Pro Se.

Dennis Donohue, Jay P. Golder, United States Department of Justice, Washington, DC, for Defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY BUT DENYING SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES

ARONOVITZ, District Judge.

**THIS CAUSE** came before the Court for hearing on February 12, 1996 upon the Internal Revenue Service's ("IRS" or "Government") motion for summary judgment filed June 23, 1994 (C.P. 92) and upon Plaintiff, Irving Cohen's ("Cohen") opposition memorandum and objections to Defendant's Statement of Material Facts (C.P. 98 and 99). In summary, the IRS assessed a civil tax penalty against Cohen in 1986, pursuant to 26 U.S.C. § 6700, in the amount of $3,687,000 for calendar years 1982 and 1983 based on his involvement in a business that the IRS determined was an illegal tax shelter. In his Complaint (C.P. 1), Cohen seeks a determination that he is not liable for any federal tax penalties assessed against him by the IRS. He is also seeking a refund of $553,070.00, plus interest, which he paid the IRS to stay the collection of the assessment.[1] The Government, in its motion for summary judgment, seeks a determination that Cohen is liable for the tax penalties assessed against him in 1986 on the basis of collateral estoppel and *res judicata.*[2]

The Court has considered the Defendant's motion for summary judgment and the Plaintiff's objections thereto, and for the reasons discussed herein, this Court grants, in part, the Government's motion for summary judgment, determining the Plaintiff to be liable for all federal tax penalties assessed against him by the IRS under 12 U.S.C. § 6700. The motion for summary judgment will be denied, however, with respect to the issue of damages. The parties shall proceed to trial for a determination of the amount of federal tax penalties owed by the Plaintiff. The following is a recitation of the pertinent undisputed facts relevant to the issues in this case and upon which this Court based its decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Cohen founded and served as the president and director of Madison Library, Inc. ("Madison"), a Nevada corporation. All of Madison's stock is directly or indirectly owned by, or held in trust for, Cohen's children. Madison, in turn, is the corporate parent of Universal Publishing Resources, Inc. ("Universal") and Geoffrey Townsend, Ltd. ("Townsend"), whose president and CEO was Cohen and whose stock also was held in trust for Cohen's children.

Barrister Associates is a New York general partnership, established by Robert Gold ("Gold") and Paul Belloff ("Belloff"). It was formed to act as the general partner of, *inter alia,* 95 limited partnerships (collectively, the "Barrister partnerships").

---

1. This amount represented 15% of the amount of the penalty. Under 26 U.S.C. § 6703(c)(1), a taxpayer may extend the period of collection of the assessment by paying "an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid."

2. Procedurally, the Government's collateral estoppel/*res judicata* defense is defective because it was not raised in the Amended Answer as an affirmative defense, as required by Fed.R.Civ.P. 8(c). Nonetheless, because Cohen has not been prejudiced by the Government's failure to affirmatively plead the defense, the Court may consider it. *See United States v. Shanbaum,* 10 F.3d 305 (5th Cir.1994) (if party raised affirmative defense at a pragmatically sufficient time and party opposing the defense was not prejudiced in its ability to respond, the court may hold that the defense is not waived); *Lucas v. United States,* 807 F.2d 414 (5th Cir.1986) (failure to plead affirmative defense did not result in waiver when there is no prejudice to the respondent).

In numerous transactions during 1982 and 1983, Townsend and Universal purchased literary properties, called "book properties,"[3] from several publishers and leased them to the Barrister partnerships. In 1986, the IRS determined that these purchases and subsequent leases of the book properties, as structured, constituted the promotion of abusive tax shelters. Thus, pursuant to § 6700 of the Internal Revenue Code,[4] the Government assessed penalties against Barrister Associates, Belloff, Gold and Parliament Securities (collectively, the "Barrister plaintiffs"), as well as against Madison, Universal and Townsend (collectively, the "Cohen plaintiffs") and Irving Cohen, individually. Each taxpayer stayed the collection of the assessment by paying 15% of the assessed penalties. Each taxpayer also filed a lawsuit for a refund of their portion of the penalties paid.

The Judicial Panel on Multidistrict Litigation transferred the *Universal, Townsend, Madison* and *Cohen* cases to Judge Thomas C. Platt of the Eastern District of New York and, at the request of the plaintiffs, Judge Platt consolidated the foregoing cases for trial. *See In re Tax Refund Litigation,* 723 F.Supp. 922 (E.D.N.Y.1989). However, because the applicable venue statute for tax refund actions provided that venue for an individual taxpayer case lies in the district where the individual resides, *see* 28 U.S.C. § 1402, and because the Government would not waive the statutory requirements, the *Cohen* case was remanded to Florida, where Cohen resides, to the Southern District of Florida for trial.

The consolidated cases were tried before a jury in New York over a period of three months and, consequently, the plaintiffs were found liable for the penalties imposed. On July 11, 1990, the jury returned a special verdict finding that Universal, Townsend, Madison and the Barrister plaintiffs had, in their organization and promotion of the Barrister partnerships made (i) gross valuation overstatements with regard to each of the Book Properties leased by the six representative limited partnerships; and (ii) false or fraudulent statements with respect to tax benefits that might be available to those who purchased an interest in one of the limited partnerships and, thus, they were liable for § 6700 penalties. *In re MDL–731—Tax Refund Litigation,* 989 F.2d 1290, 1297 (2d Cir.1993).

By agreement between the New York litigants, the amount of the penalties owed by each taxpayer involved in the New York litigation, to wit, Madison, Universal, Townsend, Gold and Belloff, was thereafter determined by the New York District Court. *In re Tax Refund Litigation,* 766 F.Supp. 1248 (E.D.N.Y.1991).[5] On June 10, 1991, the Court entered judgment against the plaintiffs, determining Universal was liable for penalties in the amount of $8,994,367.00; Townsend, $4,395,925.00; and Madison, $400,000.00. The plaintiffs appealed. On appeal, the Court of Appeals for the Second Circuit affirmed in part and reversed in part, reversing only the Government's cross-appeal which dealt solely with the calculation of the amount of the § 6700 penalties as against Gold and Belloff. The Second Circuit af-

---

**3.** The "book properties" consist of metallic plates, lithographic films and other equipment used in the printing of soft and hard cover books, and unencrypted master computer discs used in the manufacturing of computer software.

**4.** The version of § 6700 in effect at the time of the pertinent transactions imposed a penalty on any person who:
(1)(A) organizes (or assists in the organization of)—
  i.  a partnership or other entity,
  ii.  any investment plan or arrangement, or
  iii.  any other plan or arrangement, or
(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—
(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or
(B) a gross valuation overstatement as to any material matter . . .

**5.** Because Cohen was not a party plaintiff in the New York proceedings, his personal liability for the taxes assessed by the IRS was not determined.

firmed the finding that the Cohen plaintiffs made gross valuation over-statements with regard to the Book Properties. *See In re MDL–731—Tax Refund Litigation,* 989 F.2d 1290, 1297 (2d Cir.1993).

On October 19, 1992, Judge Platt transferred this case back to the Southern District of Florida for any further necessary pretrial proceedings and trial. The case was administratively reopened and, by the summer of 1994, the IRS had developed the record to the point where it believes summary judgment to be appropriate.[6]

The Court granted Plaintiff several extensions of time to respond to the Government's motion for summary judgment because, by this point in the litigation, Cohen was appearing *pro se.* Eventually, the Plaintiff's response (and Objection to the Statement of Material Facts) were filed, but no hearing was held on the motion as great efforts were then being made to find representation for the Plaintiff. However, after many months and several attorneys, all efforts proved to be fruitless.[7] In January, 1996, this Court held a hearing on the motion for summary judgment at which time it heard the proffers, representations and arguments of the parties, Irving Cohen appearing *pro se* and the Government appearing by Attorneys Dennis Donahue and Jay Golder.

### COLLATERAL ESTOPPEL

▉ The primary basis for the Government's summary judgment motion is the doctrine of collateral estoppel based on the jury verdict in the New York action against the Cohen companies. There are four prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action; and (4) the party against whom the earlier decision is asserted must

have had a full and fair opportunity to litigate the issue(s) in the earlier proceeding. *Hart v. Yamaha–Parts Distributors, Inc.,* 787 F.2d 1468, 1473 (11th Cir.1986); *I.A. Durbin v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir.1986). The Government asserts that the issues advanced and determined in the penalty refund suits in New York regarding the Cohen plaintiffs' liability for the tax penalties and the proper amount of those penalties satisfy the above criteria.

### *Identical Issues/Actually Litigated*

The issue involved in the New York action was whether the Cohen companies—Townsend, Universal and Madison—made gross valuation overstatements or false or fraudulent statements within the meaning of § 6700. The jury determined the answer in the affirmative and the companies were found liable for the tax penalties. The Government asserts this is the same issue involved in this case. It argues that because the corporations can only act through their officers, directors, employees and agents, *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir.1985); *Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1559 (S.D.Fla. 1990), the liability of the corporations for penalties imposed under § 6700 must be based on the acts of Cohen, admittedly the only officer, director and agent of the Cohen corporations. *Palazzo,* 764 F.2d at 1385.

Cohen argues there was no jury finding that he **personally** made the false or fraudulent statements. He submits that this case concerns his personal liability whereas the New York action involved the liability of corporations that acted through a number of other people. Cohen argues that for collateral estoppel to apply, there must be a finding by the New York jury that he personally made the statements at issue. *United States v. Turner,* 601 F.Supp. 757, 759 (E.D.Wisc. 1985) (two partners found to have directly and personally made or furnished a gross

---

6. In the interim, the Court held hearings on several motions, including Plaintiff's motion for refund of penalties [to pay attorneys fees], Plaintiff's objection(s) to Magistrate Judge Garber's Report and Recommendation, and several motions to withdraw by Plaintiff's counsel.

7. Apparently, Cohen does not qualify for legal aid services in these circumstances.

overvaluation statement to investor; however, because there was no evidence that the third partner directly and personally made or furnished the statements at issue, the court held the third partner was not liable for § 6700 penalties).

Cohen's argument, however, misconstrues the findings of the New York District Court, adopted by the Second Circuit. The New York jury found that the Cohen plaintiffs made over fifteen false or fraudulent statements. *See* Jury Verdict (Exhibit 1 to Donahue's Declaration). Because corporations can only act through their officers, directors or agents, and because Cohen admits to being the only officer, director or agent of the Cohen companies involved in these transactions during the relevant time periods, it is evident the jury verdict was based on Cohen's conduct.

It is uncontested that Cohen was the founder, President and CEO of Townsend and Universal. He was also the only agent of Townsend and Universal during 1982 and 1983, the relevant time period of the subject transactions, and was the only employee who worked on the tax shelters.[8] Cohen *admits* this in an affidavit filed in the New York action, wherein he declared under oath that:

> As chief executive officer of Universal and Townsend, *I was the only officer or employee of these companies that worked on the purchase and leasing of the book and disk property activities at issue in this case.*

*See* Affidavit of Irving Cohen, at ¶ 8 (Donahue's Declaration). Thus, it logically follows that there could have been no one other than Cohen, as corporate officer and sole employee of Townsend and Universal, through whom Universal and Townsend made the overstatements and false/fraudulent statements to investors. The Second Circuit's opinion supports this conclusion:

> Townsend and Universal, *through their president and CEO Irving Cohen*, negoti-

ated with a number of different publishers to purchase the Properties.

> \* \* \* \* \* \*

> The purchase price of the Properties was arrived at in negotiations between a representative of the particular publisher *and Irving Cohen*.

> \* \* \* \* \* \*

> These [service] agreements were *negotiated by Irving Cohen* ...

*Tax Refund,* 989 F.2d at 1293–94 (emphasis added).

It is significant that in addressing the issue of whether the corporations made gross valuation overstatements, the Second Circuit focused on Irving Cohen's actions:

> Irving Cohen, in negotiating the purchase of the Properties, had strong incentive to agree to inflated prices in order to increase the tax benefits available to the limited partnerships ... By labeling the notes recourse, Cohen insured that these debts would be included in computing the investment tax credit.

> \* \* \* \* \* \*

> By structuring the purchases of the Properties in this fashion, Cohen created the appearance of substantial capital investments without a genuine risk of loss ... Once the transactions were so understood by the jury, its conclusion that Cohen wanted to inflate the size of the promissory obligations—the larger the obligation, the greater the resulting investment tax credit—was inexorable.

*Tax Refund Litigation,* 989 F.2d at 1298–99. From the Second Circuit's opinion, it appears as though Cohen's personal participation and role in the tax shelters was at issue and considered in the New York action. The companies were found liable for the tax penalties *because of* the conduct of Irving Cohen.

Although Cohen argues that the corporations acted "through any number of others," and cites as an example an attorney engaged by another to prepare a Private Placement Memorandum, he ignores the inevitable con-

---

**8.** In its moving brief, the Government submits that Universal had no employees during 1983 and 1984 and that Townsend had only one employee during 1982 (Irving Cohen) and none in 1983.

clusion that, as the only officer and employee of the corporations, he must have made all the decisions for the "others" and must have been the one to supply the "others" with whatever information they had regarding the Cohen companies.

Cohen further argues collateral estoppel does not apply because he was not a party to the New York action. He claims it would be unfair if the Government were able to prevent him from having his case tried in both New York [due to venue] and then Florida [due to collateral estoppel]. Cohen further asserts he was not in privity with Universal, Townsend or Madison because, by the time the trial took place in 1990, he had resigned his position with those entities. Cohen claims he did not have the power or authority to control the companies' New York litigation and the issues tried.

The fact that Cohen was not a party to the New York action and was not even in privity with the Cohen companies at the time of trial is no bar to the application of collateral estoppel. Estoppel is not limited to parties and their privies. Moreover, it appears Judge Platt intended that *res judicata* or collateral estoppel be applied to this litigation as he stayed the remand on the *Cohen* case until after the trial of the New York action. As the Second Circuit opined:

> two separate trials involving essentially the same questions of fact and law are a waste of judicial resources which both of the districts in question can ill afford.

*Tax Refund,* 723 F.Supp. at 925.

Even if privity were required, Cohen can be deemed in privity with Townsend, Universal and Madison because, as a direct and/or beneficial owner of most or all of the shares of the corporations, Cohen controlled the affairs of the corporation. Cohen had a sufficient commonality of interest with the Cohen companies to be considered in privity with the corporation. *In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983). As a CEO and direct or beneficial shareholder in the Cohen companies, and having actively participated in the earlier trial—both before the trial and during the trial, Cohen exercised control over the companies' affairs and was,

therefore, in privity with his companies. *Astron Industrial Associates v. Chrysler Motors Corp.,* 405 F.2d 958, 961 (5th Cir.1968) (judgment against a corporation bars later litigation on the same cause of action by an officer, director or shareholder of the corporation if the individual participated in and effectively controlled the earlier case).

### Necessary to Judgment

It is implicit from the Second Circuit decision that the actions attributed to Cohen were a critical and necessary part of the judgment against the corporations in that it was "through their president and CEO Irving Cohen," that Townsend and Universal negotiated the purchase of the Book Properties, the service agreements and the leases which are the subject of the abuse alleged by the IRS.

### Opportunity to Litigate

The Government argues that Cohen had a full and fair opportunity to litigate the issues in the New York cases even though he was not a party to the New York action. Cohen, on the other hand, contends the Government's refusal to allow him to try his case in New York with the others prevented him from having a full and fair opportunity to litigate his personal liability. From the record, it appears Cohen had the opportunity to, and did in fact, litigate all issues necessary for the finding of his personal liability for the tax penalties. However, the Court does not find the Plaintiff had the opportunity to litigate his personal responsibility for damages under the statute.

The Court recognizes that it "is essential that the non-party have actual control" over litigation for collateral estoppel to apply. *Benson and Ford,* 833 F.2d at 1174. It has been stated that:

> To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain review.

A judgment against a corporation will also bar later litigation on the same cause of action by an officer, director or shareholder

of the corporation if the individual participated in and controlled the earlier litigation on behalf of the corporation. *See In re Teltronics Services, Inc.*, 762 F.2d 185, 191 (2d Cir. 1985).

From the record before this Court, it is evident that Cohen did, indeed, have effective choice as to the legal theories advanced in the New York action as well as having control over the opportunity to seek appellate review. The factual and legal issues advanced by the Cohen companies in the New York cases are the same issues this Court must address in this case (i.e. Cohen's representations and whether they create liability). Although Cohen submits that he resigned from Townsend, Universal and Madison before the trial, Cohen neglects to mention he had control over the litigation during the three years preceding the actual trial in New York. In fact, the record reveals Cohen was the CEO during certain relevant times in the New York proceedings, and was able to exercise control over the pre-trial conduct of the litigation on his companies' behalf. From the record, it appears the issues advanced to the New York District Court and on appeal to the Second Circuit involved Cohen's representations, almost exclusively. It further appears from the record that the issue of whether Cohen made the requisite representations necessary to penalize the corporations under 26 U.S.C. § 6700 was also fully tried. The Second Circuit's opinion concludes that it was upon Cohen's actions, to which he personally testified at trial, that the jury found liability on behalf of the corporations. This Court can find no unfair prejudice to Cohen by the legal proceedings of the New York District Court or the Second Circuit Court of Appeals.

Several other factors also indicate Cohen had the opportunity to fully litigate the issues raised herein. Because of the potential precedential impact the outcome of the New York action would have on his own refund suit, Cohen actively participated at every stage of the prior trial. Cohen was present throughout the trial, always sitting at counsel's table as the representative of his three companies. In addition, Cohen testified as a trial witness for several days. Cohen did not have independent legal representation, other than by the same counsel who was representing the Cohen companies. Under these circumstances, it appears from the record that Cohen had a full and fair opportunity to litigate the issue of liability in the earlier New York trial.

■ Therefore, upon the foregoing analysis, the Court is bound to accept the findings of fact of the New York District Court and the Second Circuit Court of Appeals with respect to Cohen's liability under the doctrine of collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (under the collateral estoppel doctrine, any set of facts distinctly put at issue and directly determined by a court of competent jurisdiction prevents a party from relitigating the issue in a subsequent action). However, as Cohen argues, the New York action did not consider whether the Government properly calculated the penalties assessed against him personally.[9] In fact, at the hearing on the Defendant's summary judgment motion on March 12, 1996, the Government admitted, at p. 43, line 3 of the Transcript, that the penalties assessable against Plaintiff, individually, under § 6700 were not litigated in the New York cases. Accordingly, on the issue of damages, this Court shall conduct a trial to determine the correct amount of federal tax penalties owed by the Plaintiff for the subject years.[10]

It is hereupon

**ORDERED AND ADJUDGED** that the Defendant's motion for summary judgment be, and the same is, hereby GRANTED, in part, as to the issue of Cohen's personal liability for the federal tax penalties assessable against him under 26 U.S.C. § 6700. The motion for summary judgment is hereby DE-

---

9. *See supra* note 5 and accompanying text.

10. In footnote 16 on page 21 of its brief, the Government argues that the doctrine of *res judicata*—which requires an identity of causes of action—also applies to this case because, as as- serted above, Cohen was in privity with his companies. However, this Court will not reach the merits of the Government's argument on that point, as it finds that collateral estoppel is applicable to the issue of liability in this case.

NIED, without prejudice, with respect to the issue on the amount of federal tax penalties owed by the Plaintiff for the subject years.

**DONE AND ORDERED.**