In re Thomas Aloysius WARMUS, Debtor.

Kenneth A. Welt, Chapter 11 Trustee for the Bankruptcy Estate of Thomas Aloysius Warmus, and Liquidating Trustee of the Thomas Aloysius Warmus Liquidating Trust, Plaintiff,

v.

Randall L. Leshin and Randall L. Leshin, P.A., Defendants.

Bankruptcy No. 94–24673 BKC–RBR. Adversary No. 00–2046–BKC–RBR–A.

United States Bankruptcy Court, S.D. Florida. Broward Division

Aug. 22, 2000.

**580**

Harold D. Moorefield, Jr., Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Miami, FL, for Plaintiff.

Randall L. Leshin, Pompano Beach, FL, for Defendants.

## ORDER GRANTING TRUSTEE WELT'S MOTION IN LIMINE

RAYMOND B. RAY, Bankruptcy Judge.

On July 7, 2000, the Court held a hearing to consider Plaintiff Trustee Welt's Motion in Limine which seeks a determination that Defendants Randall Leshin, Esq. and Randall Leshin P.A. (collectively "Leshin") are collaterally estopped from disputing in this adversary proceeding the factual and legal issues resolved pursuant to the final judgment entered on December 3, 1999 ("Final Judgment") in connection with adversary proceeding styled *Welt v. Investment Lease Corporation, Mae Muir, et. al.*, 96–01325–BKC–RBR–A ("Piper Adversary").

The Court has carefully considered the Motion in Limine and the arguments made by Trustee Welt and Leshin at the hearing. Furthermore, the Court has considered and takes judicial notice of the history of the above-captioned bankruptcy case ("Warmus Case" or "Warmus Estate") and the Piper Adversary. Being completely advised in the premises, the Court makes the following findings of fact and conclusions of law.

### I. *Background*
#### A. *Warmus and the American Way Group of Companies*

The history of Thomas A. Warmus ("Warmus") and his American Way group of companies is set forth in the decision styled *In re American Way*, 229 B.R. 496 (Bankr.S.D.Fla.1999). In *American Way*, the Court found that:

> Warmus first became involved in the insurance business as a life insurance agent in July 1958. On May 15, 1963, Warmus formed the American Way Service Corporation ("AWSC"), an insurance agency. Later, AWSC became a holding company for other corporations in the business of selling vehicle service contract insurance, accident and disability insurance for purchasers of automobiles, and credit life insurance.... Between 1963 and 1988, Warmus formed other companies and the business of AWSC, and its affiliated companies, increased. (footnote omitted). Most of the companies were operated from the same business location in Southfield, Michigan, where one set of employees performed necessary services for all those corporations, including AWSC.

*Id.* at 507. By early 1994, AWSC and Warmus were suffering acute financial difficulties. In an effort to gain reprieve from his creditors, Warmus and his AWSC filed voluntarily petitions for bankruptcy protection on or about December 5, 1994 ("Petition Date"). After a year in which Warmus and AWSC were unable to reorganize, chapter 11 trustees were appointed and charged with liquidating the estates.

In *American Way*, the Court found that the American Way group of companies was a "key person operation," in which all relevant financial decisions and allocations of property were handled by Warmus. *Id.* at 527. The Court further found that the American Way group of companies epitomized the interrelated corporate structure. *Id.* at 526 (citing *Eastgroup Properties v. Southern Motel Ass'n Ltd.*, 935 F.2d 245 (11th Cir.1991)). In this regard, the Court

observed that "Warmus treated all the corporations basically as one and commingled assets as he wanted." *Id.* at 507 (footnote 29).

The Piper Adversary involved one of the entities that was owned and/or controlled by Warmus under the umbrella of his American Way group of companies.

## B. *The Piper Adversary*[1]

In the Piper Adversary, Trustee Welt sued Investment Lease Corporation ("Lease Corp."), a Delaware corporation, and its sole shareholder Mae (Muir) VanderPlate ("VanderPlate"), Warmus' mother-in-law, concerning the ownership of a certain 1989 Piper Saratoga FAA aircraft number N9165N ("Saratoga").[2] (PACP 1). On the Petition Date, the Saratoga was titled in the name of Lease Corp. and was thereafter transferred by Warmus to VanderPlate immediately following the appointment of a chapter 11 trustee for the Warmus Estate. (PACP 1). Trustee Welt based his ownership claim on the allegation that Lease Corp. was the alter ego of Warmus and that VanderPlate had no real interest in Lease Corp. or the Saratoga. (PACP 1). In particular, Trustee Welt's claims were based on allegations that Warmus (a) paid for the Saratoga; (b) insured the Saratoga; (c) maintained the Saratoga; (d) flew the aircraft; (e) exercised sole dominion and control over the aircraft; and (f) held himself out to the public as the owner of the aircraft. (PACP 1). Conversely, Trustee Welt alleged that VanderPlate (a) was over seventy (70) years old; (b) had never flown an aircraft; (c) had never owned an aircraft and otherwise knew very little about aircrafts; and (d) lacks the financial ability to own and operate an aircraft. (PACP 1). Accordingly, through the Piper Adversary, Trustee Welt requested a declaratory judgment that the Saratoga was property of the Warmus Estate and requested a judgment finding that the transfer of the Saratoga violated 11 U.S.C. §§ 544 and/or 549. (PACP 1).

## C. *The Piper Adversary*

### i. *Leshin's Involvement in the Piper Adversary*

Leshin filed an appearance in the Piper Adversary as attorney for Lease Corp. and VanderPlate and assisted them in responding to the complaint and ultimately filing counterclaims for abuse of process, set-off, and breach of fiduciary duty. (*See* PACP 6, 7 and 27). As an advocate, Leshin aggressively assisted VanderPlate and Lease Corp. in litigating the issues raised in the Piper Adversary by engaging protracted discovery including paper discovery and multiple depositions. (*See* PACP 8, 9, 16, 19, 20, 29–33, 43, 45, 46, 47, 57–61, 64–67, 72–84, 89–101, 104, 105 and 108). Ultimately, the discovery in the Piper Adversary revealed to Trustee Welt that the proceeds from the sale of the Saratoga were delivered to Leshin. Therefore, Leshin was potentially liable to the estate under 11 U.S.C. §§ 542 and 550. As a result, Trustee Welt requested leave to amend his complaint in the Piper Adversary to include Leshin as a defendant in the case to pursue the proceeds from the sale of the Saratoga. (PACP 127).[3]

1. Citations to the record in the Piper Adversary shall be reflected as "PACP____". Citations to the record in the above-styled adversary proceeding shall be reflected herein as "Adv.C.P. _____"

2. For ease of reference, all of the actions taken in the Piper Adversary are attributed to Trustee Welt, notwithstanding the fact that most of these actions were taken by former chapter 11 trustee Richard Langhorne ("Langhorne"). For reasons unrelated to this matter, on October 16, 1998 Langhorne was removed from his position as chapter 11 trustee of the Warmus Estate and as Liquidating Trustee of the Thomas A. Warmus Liquidating Trust ("Liquidating Trust"). On October 20, 1998, the U.S. Trustee's Office appointed Trustee Welt as chapter 11 trustee of the Warmus Estate, and thereafter, this Court approved the selection of Trustee Welt.

3. Shortly thereafter, and while the motion to amend was pending, the Court authorized Leshin to withdraw as counsel to VanderPlate and Lease Corp. (PACP 140).

Leshin objected to the filing of an amended complaint in the Piper Adversary. (PACP 128). Ultimately, on June 9, 1999, the Court held a hearing on the motion to file an amended complaint in the Piper Adversary ("Amendment Hearing"). (PACP 124). At the Amendment Hearing, Trustee Welt advised the Court and Leshin that should the Court fail to grant leave to file the amended complaint, Trustee Welt intended to file a separate adversary against Leshin under 11 U.S.C. §§ 542 and 550 once a final judgment was obtained in the Piper Adversary. (PACP 174). Nevertheless, Leshin indicated his desire not to participate in the Piper Adversary by continuing to object to the filing of the amended complaint. (PACP 174). In particular, Leshin argued that:

> [I]f in fact the Investment Lease assets are determined to be property of the estate, then there is a turnover action that could be forthcoming against me or a damage action, but at this stage of the game I would think that much like under Section 550 it would be premature. So, Your Honor, I would respectfully ask the Court to deny leave to amend at this time. . . . [I]n any event, the trustee is not going to be prejudiced because he will always have his one year to go ahead and file suit if he wants to.

(PACP 174, pp. 15–16). On June 14, 1999, this Court granted Leshin's request and entered its *Order Denying Motion for Leave to Amend.* (PACP 145).

Thereafter, Leshin was presented with a second opportunity to participate in the Piper Adversary when VanderPlate filed a motion seeking to add Leshin as a third party defendant. (PACP 149). Once again, Leshin objected to being added as a party to the Piper Adversary. (PACP 151). Consistent with Leshin's request, the Court again permitted Leshin to re-main on the sidelines while the Piper Adversary proceeded to judgment. (PACP 154).

### ii. Events Subsequent to Leshin's Withdrawal

The vast majority of discovery conducted between the parties occurred prior to Leshin's withdrawal. (See, Piper Adversary, generally). Shortly thereafter, the parties informed the Court that the Piper Adversary was ready for trial.

On the eve of trial, Trustee Welt, Lease Corp. and VanderPlate negotiated the terms of a Final Judgment which acknowledged what the evidence clearly established, that: (a) the Saratoga airplane was improperly transferred, and thus the transfer was avoided pursuant to 11 U.S.C. §§ 362, 544(b) and 549; (b) Trustee Welt may file suit to recover, for the benefit of the estate, the Saratoga *or its value,* from all initial, immediate, mediate or subsequent transferees pursuant to 11 U.S.C. § 550; and (c) the Saratoga Proceeds are property of the bankruptcy estate pursuant to 11 U.S.C. § 541. (PACP 170).[4] Furthermore, Trustee Welt informed Leshin of the terms of the Final Judgment before it was entered and informed Leshin that Trustee Welt intended to seek recovery from Leshin pursuant to 11 U.S.C. § 550. (Adv.C.P. 32, at Exhibit "G").

On December 3, 1999, the Court entered the Final Judgment. (PACP 170). To date, Leshin has failed to challenge the entry of the Final Judgment.

### D. Commencement of the Above–Styled Adversary

On February 2, 2000, Trustee Welt commenced the above-styled adversary case. (Adv.C.P.1). In his complaint, Trustee

---

**4.** The settlement also provided that Trustee Welt would not seek to satisfy the Final Judgment against VanderPlate personally. (PACP 170). This agreement was consistent with the allegations of the complaint and the evidence that Warmus used VanderPlate as a mere conduit for the transfer, and therefore, Trustee Welt might not have been able to recover from VanderPlate personally in any event. *See, e.g., In re Chase and Sanborn Corp.,* 813 F.2d 1177 (11th Cir.1987)

Welt seeks to recover the Saratoga proceeds as property of the estate or as transfers previously avoided pursuant to 11 U.S.C. §§ 542 or 550. (Adv.C.P.1).

On June 6, 2000, Defendants filed an answer to the Complaint and a counter claim against Trustee Welt (collectively "Answer"). (Adv.C.P. 28). In large part, the myriad of defenses and claims brought by Defendants in the Answer are premised upon a challenge to the validity of the factual findings and legal conclusions set forth in the Final Judgment (Adv.C.P.28).

In his Motion in Limine, Trustee Welt seeks to bar Leshin from attacking the factual and legal issues resolved in the Final Judgment based upon the doctrine of collateral estoppel, thereby preventing the relitigation of issues resolved in the Piper Adversary. For the reasons set forth below, the Court finds the application of collateral estoppel to be appropriate due to the specific facts of this case.

## II. *Collateral Estoppel*

■ The doctrine of collateral estoppel or issue preclusion bars re-litigation of an issue of fact or law that has been litigated and decided in a prior suit. In other words, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude revisiting the issue in subsequent litigation. *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.*, 32 F.3d 528, 532 (11th Cir.1994) (citations omitted). The application of collateral estoppel or issue preclusion is committed to the sound discretion of the trial court, and the policy supporting collateral estoppel is to protect litigants from the burden of re-litigating identical issues and to promote judicial economy by preventing needless litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■ The four prerequisites to the application of collateral estoppel are as follows: (1) the issue(s) at stake must be identical to the one alleged in the prior litigation; (2) the issue(s) must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue(s) in the earlier proceeding. *Cohen v. U.S.*, 924 F.Supp. 1164 (S.D.Fla.1996). For the following reasons, the Court finds all of these elements satisfied in this case.

■ The requirements that the issues be actually litigated and necessary to the judgment in order for issue preclusion to apply are altered somewhat in the context of a consent decree which is intended to avoid litigation. In these circumstances, the crucial inquiry is the intention of the parties as manifested by the consent decree and the evidence. *In re Halpern*, 810 F.2d 1061, 1064, (11th Cir.1987).

■ Here, the issue at the very heart of the Piper Adversary was whether the Saratoga was property of the bankruptcy estate such that the proceeds from its transfer were recoverable under 11 U.S.C. § 362, 542 544 and/or 549. (PACP 1). Lease Corp. and VanderPlate fully litigated these issues, with the actual aid and assistance of Leshin as counsel. (PACP 6–9, 16, 19, 20, 27, 29–33, 43, 45, 46, 47, 57–61, 64–67, 72–84, 89–101, 104, 105 and 108). In fact, at the time these issues were litigated, Leshin had actual knowledge that he was a target under 11 U.S.C. §§ 542 and/or 550, and therefore, Leshin was, in effect, representing his own interests through VanderPlate and Lease Corp. (compare PACP 127 and 128, with Adv. C.P. 28).

In fact, in Leshin's "counterclaims" filed in this action, he admits to having accepted the Saratoga proceeds in payment for legal services to Dailey, Lease Corp. and VanderPlate and that, prior to accepting the money, he conducted due diligence to determine whether proceeds from the sale of the Saratoga could be subject to the own-

ership claims of the Warmus Estate. (Adv.C.P.28) Furthermore, the record clearly demonstrates that Leshin was aware that the Court intended the resolution of the Piper Adversary to foreclose further litigation of the issues presented therein when it granted Leshin's objection to being added as a party defendant. Leshin had at least two opportunities to litigate in the Piper Adversary through joinder motions, but he successfully objected to participating in that matter. Accordingly, the Court finds that Lease Corp., VanderPlate, and Leshin had ample opportunity, and in fact, did fully litigate the issues raised by the Piper Adversary which the parties intended to be foreclosed by the entry of the Final Judgment.

The Court also finds that the issues in this case for which the Trustee seeks the application of collateral estoppel are identical to the issues raised in the Piper Adversary. Therefore, in the interests of justice and fairness, the Court concludes that giving preclusive effect to the Final Judgment is consistent with the policy of the doctrine of collateral estoppel because it protects creditors from the sort of frivolous litigation that continues to plague the Warmus Estate, including litigation by Leshin. Further, it will promote judicial economy by preventing the re-litigation of issues that have been conclusively established by the Final Judgment.

### III. *Conclusion*

For the reasons discussed herein, it is—

**ORDERED** and **ADJUDGED** as follows:

1. The Motion in Limine is hereby GRANTED.

2. Leshin is hereby estopped from disputing any of the factual and legal issues resolved in the Final Judgment. In particular, and without limitation, Leshin is hereby estopped from challenging in this adversary proceeding that: (a) the Saratoga airplane was improperly transferred and avoided pursuant to 11 U.S.C. §§ 362, 544(b) and 549; (b) Trustee Welt may file

suit to recover, for the benefit of the estate, the Saratoga *or its value*, from all initial, immediate, mediate or subsequent transferees pursuant to 11 U.S.C. § 550; and (c) the Saratoga Proceeds are property of the bankruptcy estate pursuant to 11 U.S.C. § 541. (PACP 170).