In re Thomas Aloysius WARMUS,
Debtor.

Randall L. Leshin and Randall L.
Leshin, P.A., Appellants,

v.

Kenneth A. Welt, Chapter 11 Trustee of
Bankruptcy Estate of Thomas Aloysi-
us Warmus, and Liquidating Trustee
of the Thomas Aloysius Warmus Liq-
uidating Trust, Appellee.

Nos. 01–6615–CIV–DIMITROULEAS,
01–7246–CIV–DIMITROULEAS.
Bankruptcy No. 94–24673–BKC–RBR.
Adversary Nos. 96–1325–BKC–RBR,
00–2046–BKC–RBR–A.

United States District Court,
S.D. Florida.

March 25, 2002.

Randall Leigh Leshin, Richard G. Elie, Pompano Beach, FL, for appellants.

Drew Michael Dillworth, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Miami, FL, for appellee.

## *FINAL ORDER REVERSING BANK-RUPTCY COURT'S ORDERS IN CASE NO. 01–7246 FINAL ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS IN CASE NO. 01–6615*

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court pursuant to 28 U.S.C. § 158(a), of two appeals by Randall Leshin and Randall Leshin, P.A. ("Appellants"), of several Orders of Bankruptcy Judges entered in Cases No. 01–6615 and 01–7246, as the following motions filed in Case No. 01–7246: Appellants' Motion for Stay [DE 5], Appellants' Motion for Extension of Time to File Brief and to File Overlength Brief [DE 6], Appellants' Motion for Richard Elie to Appear Pro Hac Vice [DE 8], Appellants' Motion for Extension of Time to File Reply Brief [DE 12], and Appellants' Motion to File Overlength Reply Brief [DE 13]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

At the outset, the Court hereby **CONSOLIDATES** these two bankruptcy appeals. The appeal filed in Case No. 01–6615 sought to appeal the denial by the bankruptcy court of Appellants' Motion for Relief from Judgment or Order Approving Compromise of Controversy in a previous adversary proceeding, 96–1325–BKC between the Trustee and former clients of Attorney Leshin ("Piper Adversary"). The appeal filed in Case No. 01–7246 seeks to appeal the final judgment entered in the adversary proceeding by the Trustee against the Leshin Appellants ("Leshin Adversary"), as well as appealing the same issues raised by the denial of the motion appealed in Case No. 01–6615. Therefore, judicial economy is enhanced by considering the two appeals together, as they involve similar issues.

In addition, it is hereby **ORDERED AND ADJUDGED** that Appellants' Motion for Extension of Time to File Brief and to File Overlength Brief [DE 6], Appellants' Motion for Richard Elie to Appear Pro Hac Vice [DE 8], Appellants' Motion for Extension of Time to File Reply Brief [DE 12], and Appellants' Motion to File Overlength Reply Brief [DE 13] are hereby **GRANTED,** while Appellants' Motion for Stay [DE 5] is hereby **DENIED as moot.**

## I. BACKGROUND

Appellants seek to appeal a final order in an adversary proceeding brought by Kenneth Welt, a Liquidating Trustee of the Thomas Aloysius Warmus Liquidating Trust ("Welt" or "Trustee"), to recover proceeds of a private airplane purportedly received by Leshin from his former clients, Mae Muir Vanderplate ("Vanderplate") and Investment Lease Corp ("Lease Corp."). Leshin, an attorney, had been originally retained in June 1996 by Warmus' wife, Nancy Kay Dailey to represent her in various bankruptcy proceedings spawned by the December, 1994 Chapter 11 bankruptcy by Warmus and his American Way group of companies. Vanderplate, Dailey's mother, apparently paid Leshin from funds from Lease Corp. The Piper, an airplane owned by Lease Corp. (hereinafter "Piper," "Piper Saratoga," or "Saratoga"), was sold in January, 1996 for about $170,000.

In November, 1996, the Piper Adversary was filed against Vanderplate and Lease Corp. In December, 1996, Leshin was retained to represent Vanderplate and Lease Corp. in that adversary proceeding. Leshin was paid by Vanderplate and Lease Corp. through mid–1997. At some point thereafter, Leshin withdrew from representing Vanderplate and Lease Corp. Before his withdrawal, the Trustee attempted to make Leshin a party defendant in the case. After his opposition, the bankruptcy court denied the motion to add Leshin. After Leshin's withdrawal, Vanderplate and Lease Corp. moved to add Leshin as a third-party defendant. That motion was also denied.

On November 13, 1999, on the apparent eve of trial, Vanderplate and Lease Corp. came to an agreed settlement and final judgment with Trustee Welt wherein the parties agreed that the Piper Saratoga airplane was property of the Warmus bankruptcy estate, that the airplane was transferred in violation of 11 U.S.C. §§ 362, 544(b), and 549 without Vanderplate's knowledge, that the transfer of the airplane is avoided, and that the Trustee may file suit to recover the proceeds of the airplane. In return for these admissions, Trustee Welt agreed to forgo execution against Vanderplate and Lease Corp., but would instead proceed against Leshin, to recover proceeds of a Piper Saratoga airplane. The bankruptcy court approved that settlement, and shortly thereafter

Welt then filed the instant bankruptcy proceeding against Leshin. Stipulation for Settlement signed November 13, 1999, CP 170 in Piper Adversary, 96–1325–BKC (referenced in Agreed Final Judgment), also found attached to CP 2655 in 94–24673–BKC, main Warmus bankruptcy. There appears to be no dispute that Leshin was never formally served with notice of the settlement agreement and court hearing in the Piper adversary, as he was not a party to the agreement, and was no longer counsel of record for the parties agreeing to the settlement. See trial transcript of March 13, 2001, CP 109 in Case No. 01–7246, pp. 181, 195.

In this Leshin adversary proceeding now on appeal, the bankruptcy court made several pre-trial rulings adverse to Appellants, and after a trial, eventually entered final judgment against Appellants. First, the bankruptcy court struck Leshin's demand for jury trial and dismissed Leshin's counterclaims for fraud filed against Muir and Lease Corp., 252 B.R. 584 (Bankr. S.D.Fla.2000), and, second, in an order granting Trustee's motion in limine, ruled that Leshin could not attack the factual and legal basis for the determination that the Piper airplane was improperly transferred, that it was the property of the bankruptcy estate, and that Trustee Welt can file suit to recover the airplane or its proceeds in an action to benefit the estate. See 252 B.R. 579 (Bankr.S.D.Fla.2000). The bankruptcy court concluded that collateral estoppel barred Leshin from litigating these issues, decided in the Piper adversary case in which Leshin purportedly participated. As for the partial dismissal of counterclaims, the bankruptcy court first struck the demand for jury trial, since Leshin filed a permissive counterclaim (which Leshin argues was compulsory) against Trustee Welt, indicating that Leshin sought recovery from the Warmus bankruptcy estate, and also struck the second and third counts of the Counterclaim against Muir and Lease Corp. as related to issues between non-debtor parties containing no federal or bankruptcy issues. The Trustee's case against Leshin, and Leshin's counterclaim as to Count I proceeded to trial before a visiting bankruptcy judge ("trial judge"), with a final judgment entered against Leshin and in favor of the Trustee for $128,782.41.

Leshin now appeals the final judgment and several adverse pre-trial rulings. Leshin raises numerous issues on appeal, including that the bankruptcy court erred: 1) in the pretrial rulings striking his jury demand; 2) dismissing his counterclaims; 3) precluding the introduction of evidence regarding the issues settled by his former clients in the Piper adversary; 4) at trial, in not allowing evidence relating to the facts stated in the settlement after trial began; 5) in the deeming of Lease Corp. as an alter ego of Thomas Warmus; 6) in allowing the Warmus deposition in at trial without a showing of unavailability; 7) in making Randall Leshin personally liable, piercing the veil of Randall Leshin, P.A. without any evidence presented on that issue; and 8) in failing to conclude Leshin had a valid defense of good faith receipt of the proceeds for value without knowledge of voidability under 11 U.S.C. § 550(b). The Court will address the issues in turn.

## II. STANDARD OF REVIEW

■ The Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. Fed.R.Bankr.P. 8013; *Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069, 1071 (11th Cir. 1990). Equitable determinations by the bankruptcy court are reviewed for abuse of discretion, *In re Red Carpet Corp.*, 902 F.2d 883 (11th Cir.1990), while conclusions of law are reviewed by the District Court *de novo. In re Chase & Sanborn Corp.,*

904 F.2d 588 (11th Cir.1990); *In re Sublett*, 895 F.2d 1381 (11th Cir.1990).

## III. DISCUSSION

### A. *Jury Demand*

■ The United States Supreme Court has made clear that a creditor or other party that does not file a claim against an estate is entitled to a jury trial on the trustee's complaint to avoid a fraudulent transfer to that creditor or party. See *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (creditor who files claim not entitled to jury trial on trustee's action to avoid a preferential transfer to that creditor). Leshin argues in this case that he is entitled to a jury trial on his counterclaim for fraud in the procedure taken by the Trustee in obtaining the settlement from his former clients in the Piper adversary. The bankruptcy court relied on this case law to conclude that Leshin's counterclaim against the Trustee in his official capacity amounted to a claim against the estate, and therefore any right to a jury trial was waived. 252 B.R. at 587. Leshin argues that his counterclaim is compulsory (arising out of the same transaction or occurrence that is the subject matter of the opposing party's claim)[1], and therefore, his mandatory filing of such a claim cannot act to waive his constitutional right to a jury trial.

■ This Court first concludes that the first counterclaim, alleging fraud by Trustee Welt in obtaining a final judgment with Leshin's former clients in the Piper Adversary as the means to bring the instant action against Leshin, is compulsory, in that it does arise from the same transac-

tion or occurrence that is the basis for the Trustee's action to void the transfer as an unlawful post-petition transfer of estate property. That the elements necessary to prove the counterclaim are clearly different and separate from the elements needed to prove the Trustee's avoidance claim, the obtaining of the Final Judgment in the Piper Adversary was the same occurrence or transaction as the instant action to void the transfer of the Piper proceeds to Leshin. The Final Judgment is the only legal underpinning of the action against Leshin. The fact that Leshin has also attempted to mount a collateral attack against the Final Judgment in a related proceeding, does not detract from this argument that his counterclaim for fraud in obtaining a judgment that forms the basis for the instant action against him arose out of the same transaction or occurrence.

■ However, despite this conclusion that the counterclaim is compulsory, the claim nonetheless seeks damages from the bankruptcy estate. Therefore, the counterclaim is akin to the filing of a claim, and does act as a waiver as to the right to a jury trial. See *In re Peachtree Lane Associates, Limited*, 150 F.3d 788, 798–99 (7th Cir.1998); *In re Southern Textile Knitters, Inc.*, 236 B.R. 207, 211 (Bankr. S.C.1999) (and numerous cases cited therein). The fact that Leshin is forced to make his counterclaim in this proceeding is irrelevant to the Supreme Court's decisions that seeking money from the bankruptcy estate acts as a waiver of the right to a jury trial under the bankruptcy scheme set up by Congress. That the Supreme Court's interpretation of this scheme seems unfair to Leshin is beyond this Court's authority to remedy. This

---

**1.** Federal Rule of Bankruptcy 7013(a) refers to Rule 13(a) of the Federal Rules of Civil

Procedure regarding the definition of a compulsory counterclaim.

Court concludes that the striking of the jury demand was proper.[2]

### B. Dismissal of Counterclaims II and III

■ Turning next to the bankruptcy court's dismissal of the second and third counterclaims against Vanderplate and Lease Corp. for breach of contract for legal services and fraudulent inducement to contract for legal services, here the Court agrees with the bankruptcy court that these claims against non-parties were not properly joined in this action. The bankruptcy court was without jurisdiction to confer relief as neither Lease Corp. nor Vanderplate were parties to the adversary proceeding. These claims fail under the part of Fed.R.Civ.P. 13(a) not quoted above, wherein an additional requirement to a claim arising out of the same transaction or occurrence being "compulsory" is that the claim "does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Here, the Court agrees with the bankruptcy court that the dismissal was proper as to these two permissive counterclaims. Such dismissal should be without prejudice.

### C. Issue Preclusion and the Order in Limine

■ Appellants challenge the bankruptcy court's August 22, 2000 Order in Limine which concluded that collateral estoppel precludes Leshin from challenging the factual findings in the settlement agreement between the Trustee and his former clients, Vanderplate and Lease Corp. The Eleventh Circuit has established four prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action, and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.,* 32 F.3d 528, 532 (11th Cir.1994). Though the bankruptcy court used the correct standard, the court abused its discretion in concluding that collateral estoppel (issue preclusion) should apply.

■ The first three requirements have been met, with the possible exception of the "actually litigated" prong. The issues that arose as to ownership of the Piper airplane and whether it was part of the Warmus bankruptcy estate were litigated somewhat, but after Leshin's withdrawal, his former clients settled these issues, rather than having a court determine the outcome. Putting aside whether that settlement meets the "actually litigated" standard, the key issue is that Leshin was not a party to that settlement. The bankruptcy court concluded that because Leshin represented Vanderplate and Lease Corp. earlier in the Piper adversary, and because Leshin twice successfully opposed motions to join him as a defendant in that action giving him notice that he was a target of that action, that he therefore had "ample opportunity" to litigate those issues. 252 B.R. at 584. This Court disagrees.

■ Leshin correctly argues that collateral estoppel cannot preclude him from

**2.** See also *Jobin v. Youth Benefits Unlimited, Inc.,* 59 F.3d 1078, 1082 (10th Cir.1995), which held that a trustee's action to void an unauthorized post-petition transfer in an adversary proceeding in which the defendant did not file a claim is a purely equitable action, and no jury trial is mandated under the Bankruptcy Act.

litigating issues that his former clients chose to concede in return for an agreement by the Trustee not to execute against them. Leshin was not a party to the earlier settlement, and was not served with notice of the motion to approve that settlement. Transcript, CP[3] 109 at pp. 181, 195. That he was an attorney in that case, and that he successfully opposed joinder of himself, does not make him a party, nor did it waive his right to litigate those issues in a later action against him. In addition to the failure of what might appear to be technicalities in bringing Leshin as a party in to the Piper adversary, the imputation to an attorney of a duty to bring oneself personally as a party into a case just because the receipt of the legal fees from the defendant client might come from a bankruptcy asset, would severely chill the ability of targets of trustee avoidance actions to hire attorneys. This conclusion might be different if the party sought to be joined was not the attorney representing the defendants in the trustee's actions. Special care must be given to the use of offensive collateral estoppel against an attorney of defendants who was never made a party to the action. Appearance as an attorney litigating an issue while representing defendants is not the same as an opportunity to litigate on behalf of oneself. Therefore, this Court concludes that the bankruptcy court abused its discretion in precluding Leshin from litigating the facts contained in the Piper adversary settlement.

### D. Evidentiary Rulings at Trial Did Not Cure Defects in Order in Limine

The Trustee argues that even if collateral estoppel was improperly used against Leshin, Leshin still had the opportunity at trial to present evidence regarding the underlying settlement. This Court disagrees. The trial court stated several times that he would follow the Order in Limine. See Transcript, CP 109 at pp. 7–13, 38, 69–70, 75, 191–192. At only one point did the trial court consider whether the Trustee had "opened the door" to Leshin presenting evidence attacking the Piper adversary final judgment. *Id.* at 75–76. However, that leeway was limited to asking Vanderplate whether Lease Corp. and the Piper airplane were owned by her or Thomas Warmus, and the trial court later reiterated that he would follow the Order in Limine. *Id.* at 191–92; Findings of Fact and Conclusions of Law, May 23, 2001, CP 110 at p. 15. In addition, the Findings of Fact discuss the supporting evidence at trial, but rely on the Warmus deposition, which as discussed below, should not have been admitted over objection that Mr. Warmus was available to testify. Findings of Fact at pp. 15–16. Therefore, this Court concludes that the trial proceedings did not cure the errors contained in the Order in Limine.

### E. Use of Thomas Warmus Deposition

Leshin argues on this appeal that the trial court erred in admitting the deposition of Thomas Warmus without the Trustee meeting its burden of showing that Mr. Warmus was unavailable. See Transcript, pp. 21–25. The Trustee argues that because Warmus was absent from the trial despite being served by the Trustee. Rule 804(a) of the Federal Rules of Evidence defines "unavailability" to include the situation where a witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means". The Eleventh Circuit has held that "under FRE 804 plaintiff must show appropriate diligence"

**3.** "CP" is used by the bankruptcy court to refer to docket entry numbers.

in attempting to serve the witness. *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1217 (11th Cir.1993); see also *Baylor v. Jefferson County Bd. of Educ.*, 733 F.2d 1527, 1533 (11th Cir.1984).

At trial, the Trustee argued that Warmus had been served, but failed to appear. Leshin did not dispute these facts, but argued that more than mere service must be shown, since he had spoken to Warmus the night before and Warmus indicated that he was waiting for the Trustee to call him regarding when to appear. Without relying on this argument of counsel as not sworn evidence regarding the telephone conversation with Mr. Warmus, the Court concludes that Plaintiff did not meet its burden of showing unavailability. Service of the subpoena without any evidence of followup to make sure the witness appears does not show "appropriate diligence."[4] Therefore, the trial court abused its discretion in allowing the Warmus deposition to be used at trial in this case because the Trustee did not meet his burden of showing unavailability.

### F. Deeming of Warmus as Alter Ego of Lease Corp.

A key part of the Conclusions of Law entered in conjunction with the Final Judgment against Leshin and his professional association is the finding that Lease Corp. was the alter ego of Warmus. However, the trial court's findings are partly

based upon the erroneously admitted Warmus affidavit. See Findings of Fact at pp. 7–9, footnotes 14, 15, 20–23. Though also based upon the testimony of Vanderplate, it is difficult to determine whether the trial court would have based its conclusion solely on Vanderplate's testimony.[5] In addition, the trial court relied on the pretrial rulings described above that applied collateral estoppel against Leshin on the issue settled in the Piper adversary settlement that Lease Corp. was the alter ego of Warmus. See Findings of Fact at p. 6.

Leshin also argues on appeal that judicial estoppel precludes the Trustee from arguing that Lease Corp. was the alter ego of Warmus since the Trustee's settlement with Lease Corp. and Vanderplate stated that "Vanderplate is the sole shareholder of Lease Corp." See Stipulation for Settlement signed November 13, 1999. In *McKinnon v. Blue Cross and Blue Shield of Alabama*, 935 F.2d 1187, 1192 (11th Cir.1991), the Eleventh Circuit stated "Judicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." (Citing *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir.1983)). Leshin argues that the Trustee is estopped from now arguing that Lease Corp. is the alter ego of Warmus.

---

4. The Court does conclude that if the Trustee has met his burden of showing unavailability under Rule 804(a)(5), then the deposition of Warmus can be admitted under Rule 804(b)(1) as former testimony in a related civil proceeding in which Leshin's predecessors in interest, Vanderplate and Lease Corp., were represented (by Leshin), and had an opportunity to cross-examine Mr. Warmus. Given the plain language of the rule, the fact that Leshin was not a party at that point is not dispositive, rather, on the particular issue of whether Lease Corp. was an alter ego of Warmus for the determination of whether the

Piper airplane was part of the Warmus bankruptcy estate, Lease Corp. was the predecessor in interest of Leshin for that issue.

5. This Court notes that Vanderplate's testimony was conflicting, since she also appeared to testify that she signed all the formal paperwork. See Transcript at pp. 44–46, 56, 61. However, this Court is not reversing the bankruptcy court for its factual findings as to the meaning of Vanderplate's testimony as a whole.

This Court concludes that judicial estoppel is not appropriate in this circumstance. That Vanderplate was formally the sole shareholder of Lease Corp. is not disputed or contradicted by the Trustee's position that despite the use of Vanderplate's name on all formal Lease Corp. documents, Warmus was in fact using Lease Corp. as an alter ego. The Trustee's argument seeking such a distinction is not a divergent position that makes a mockery of justice.

However, even without the application of judicial estoppel, this Court concludes that the trial court's conclusion as to the alter ego issue were partly based upon the use of the Warmus deposition at trial, and therefore is reversed as clearly erroneous.

### G. Personal Liability of Randall Leshin

Leshin also appeals the Final Judgment that concludes that Leshin, individually, is jointly and severally liable with his Randall Leshin, P.A., his wholly owned professional services corporation. Leshin argues that the bankruptcy court did not take any evidence on the issue of piercing the corporate veil of Leshin's professional association. The Trustee does not appear to address this argument in his Answer Brief.

■■■ The general rule in Florida is that courts will pierce the corporate veil where the corporation was a sham to accomplish some ulterior purpose, evade some statute or to accomplish some fraud, or the corporation was used for fraudulent or misleading purposes, particularly of creditors. *Steinhardt v. Banks,* 511 So.2d 336, 339 (Fla. 4th DCA 1987), *rev. den.* 518 So.2d 1273. The alter ego or instru-

mentality test has been rejected by the Florida Supreme Court. *Id.* at 338, *quoting Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114, 1120 (Fla.1984). In this case, the mere fact that Randall Leshin wholly owned his professional services corporation is insufficient to make him jointly and severally liable with his corporation.[6]

### H. Good Faith Defense under Section 550

■■■ Leshin also appeals the trial court's conclusion that he is not entitled to the safe harbor for a transferee "that takes for value ... in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1) (West 2002). Since the facts on this particular issue are not in dispute, the Court reviews the trial court's conclusions of law *de novo.* The trial court accepted Leshin's testimony that Leshin performed due diligence in mid–1996 to determine whether Lease Corp. was a separate entity apart from the Warmus bankruptcy estate. Transcript, pp. 121, 151, 167. Leshin concluded that because Vanderplate performed and observed the corporate formalities of Lease Corp., that he could accept payment for legal services related to the bankruptcy proceeding from an account of Lease Corp. From June of 1996 until November 1996, Leshin represented Vanderplate's daughter, Nancy Daily, in related proceedings to the Warmus bankruptcy. Only in December, 1996, did he become aware that the Trustee was seeking to void the transfer of the Piper airplane and the proceeds thereof.[7]

6. The Court notes that the transcript does not appear to specify whether the checks from Lease Corp. to Leshin were made out to him or to his professional association. However, the Court could see that even if the checks were made out to "Randall Leshin," if all of the checks were deposited into the Randall Leshin, P.A. client trust account, then that

fact may determine the issue of piercing the corporate veil. Such an issue should be revisited upon remand.

7. Leshin testified that he received about $73,000 of the $128,000 payments prior to being on notice of the Trustee's action to recover the Piper proceeds. Transcript, p.

The trial court concluded that because Leshin performed due diligence on Lease Corp.'s source of funds, he cannot show that he is entitled to the safe harbor because he had knowledge that the funds might be property of the estate. The trial court concluded that Leshin's conclusion regarding his due diligence did not matter, but rather the fact that he did this due diligence (checking corporate records, tax returns, etc.) gave him knowledge of facts that the funds might be avoidable. The trial court relied upon *In re Sherman*, 67 F.3d 1348, 1357 (8th Cir.1995), which stated the standard as more than mere notice, but rather if the transferee "knew facts that would lead a reasonable person to believe that the property transferred was recoverable."

This Court disagrees with the trial court's legal conclusion on this issue. Leshin, an attorney, performed due diligence prior to representing a non-debtor in a bankruptcy proceeding, and found corporate documents and tax returns in the separate name of the corporate entity funding his fees. That the company was owned by the mother-in-law of the debtor, who owned numerous companies himself, does not impute to the attorney such knowledge at that time. As the *Sherman* court stated, it is not required that "a transferee to be a vigilant monitor for the creditors' benefit when he possesses no information suggesting that there is a fraudulent conveyance in the chain." 67 F.3d at 1357. This standard is particularly important when being applied to an attorney. While clearly on the one hand attorneys should be held to a high standard to avoid their abusing the bankruptcy system to collect fees they should have known

were voidable post-petition transfers, at the same time, the trial court's conclusion in this case will have a chilling effect on the ability of persons sued by a trustee to hire and pay for a lawyer. The fact that in December, 1996, Leshin was on notice that the Trustee was seeking via litigation to void the transfer of the airplane proceeds that were being used to pay Leshin, and thus Leshin had knowledge at that point that the issue of the origin of the funds would be contested, does not mean that such an attorney is imputed with knowledge of the voidability of the post-petition transfer if there is also a defensible argument based upon documented facts that the transfer is not voidable. Clearly, bankruptcy attorneys (or criminal attorneys in a forfeiture setting) run some risk that their clients funds are tainted, but the performance of due diligence and the making of a reasonable conclusion based upon documented facts that the funds are not tainted does create a good faith defense that the attorney did not have "knowledge of voidability" as used in Section 550(b).

Therefore, based upon the record in this case, the Court reverses the legal conclusion of the bankruptcy judge regarding the fact that due diligence was performed gives an attorney "knowledge of voidability" regardless of what the due diligence found. The Court does not determine at this point that Leshin has proven his Section 550 defense, but that issue should be revisited upon remand.

### I. Appeal of Rule 60 Denial in Bankruptcy Case No. 96–1325–BKC–RBR

Leshin has also appealed the denial of his Rule 60 motion to vacate the settlement in the Piper adversary case in Dis-

---

172. However, due to the later dates of Leshin's depositing of the checks, the trial court concluded that Leshin deposited $70,500 of the $128,782.41 after Leshin knew that the

Trustee sought to recover the proceeds from the Piper airplane. The Court has no reason to disturb this discrete factual conclusion.

trict Court Case No. 01–6615–CIV. While that appeal raises legitimate issues of notice regarding the bankruptcy court's granting of the motion for approval of settlement, since the settlement ended up being adverse to Leshin's interest, that adverse interest is directly tied to the bringing of the Leshin adversary. In other words, Leshin did not technically have a right to be heard at settlement of the Piper adversary. That right to be heard only arises from the use of the final judgment and settlement against him. Since the Court in this appeal of the rulings in the Leshin adversary reverses the judgment against Leshin, and will not allow any preclusive effect from the settlement agreement in the Piper adversary, Leshin did not have a right to notice of the settlement of the Piper adversary, and therefore no right to challenge under Rule 60 the entry of the final judgment in that case. Thus, the final judgment in the Piper adversary shall remain in effect, though it cannot be used offensively as estoppel against anyone other than Vanderplate and Lease Corp., the parties who signed the stipulation for settlement that led to entry of that judgment.

## IV. CONCLUSION

To the extent the Final Judgment ruled against Leshin on Count I of his counterclaim, that adverse judgment is reversed for the same reasons as the reversal of the final judgment, particularly with regard to the bankruptcy court's conclusion that the pretrial rulings regarding collateral estoppel precluded Mr. Leshin from presenting evidence at trial in support of his counterclaim. See *Findings of Fact*, p. 4; Transcript at pp. 187, line 7 through 189.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The appeal in Case No. 01–6615 is hereby **DENIED,** and the bankruptcy judge's order in that case is hereby **AFFIRMED;**

2. In Case No. 01–7246, the final judgment entered in the Leshin Adversary, 00–2046 is hereby **VACATED;**

3. The Bankruptcy Court's Order in Limine of August 22, 2000 is hereby **REVERSED;**

4. The Bankruptcy Court's Order of August 23, 2000 regarding the jury demand and counterclaims II and III is hereby **AFFIRMED;**

5. Case No. 01–7246 (Adversary No. 00–2046BKC–RBR–A) is hereby **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion;

6. All other pending motions not otherwise ruled upon above are hereby **DENIED as moot;**

7. The Clerk may close these two cases;

8. The Trustee shall distribute a copy of this Order to any creditor or attorney for the creditors that should receive notice of this Order.