CONTROL CENTER, L.L.C., Debtor–In–Possession Plaintiff,

v.

Lawrence William LAUER, III, Defendant.

No. 6:02–CV–1351–Orl–22JGG. Adversary No. 02–173.

United States District Court, M.D. Florida, Orlando Division.

Dec. 11, 2002.

James Edward Cheek, III, Ryan Edward Davis, Winderweedle, Haines, Ward & Woodman, P.A., Orlando, FL, for Control Center, L.L.C.

Bernard H. Dempsey, Jr., Lillian N. Chaves, Dempsey & Sasso, Orlando, FL, for Lawrence William Lauer, III.

## ORDER

CONWAY, District Judge.

## I. INTRODUCTION

This case comes before the Court upon consideration of Defendant, Lawrence William Lauer, III's ("Lauer"), Amended Motion to Withdraw Reference and for Transfer to District Court (Doc. No. 3). Lauer filed an Amended Motion to Withdraw Reference and for Transfer to District Court (Doc. No. 1) on November 4, 2002.[1] The Plaintiff, Control Center, L.L.C. ("Control Center"), filed a Response (Doc. No. 2) on October 15, 2002. Having reviewed the motion and memoranda, this Court **GRANTS** Lauer's Amended Motion to Withdraw Reference and for Transfer to District Court.

## II. BACKGROUND

Control Center is a highly specialized technology company with its principal place of business in Winter Park, Florida.[2] Lauer was an employee of Control Center from June of 1997 to May of 2002.[3]

On June 17, 1997, Control Center and Lauer entered into a Sales Representative Agreement prohibiting Lauer from soliciting suppliers represented by Control Center for two years following his termination

---

1. Lauer filed a Motion to Withdraw Reference and for Transfer to District Court (Doc. No. 1) on September 20, 2002. Subsequently, on October 29, 2002, this Court notified Lauer that his motion was deficient on account of his failure to pay the required filing fee. *See* Doc. No. 3, Ex. A. As a result, on November 4, 2002, Lauer filed an Amended Motion to Withdraw Reference and for Transfer to District Court (Doc No. 3). The original motion and the amended motion contain the same arguments, and cite to identical authority.

2. *See* Doc. No. 2, ¶ 10, at 3; *see also* Complaint, ¶ 1, at 1; Answer, Affirmative Defenses, and Counterclaim, ¶ 1, at 2.

3. *See* Complaint, ¶ 6, at 2; ¶ 14, at 4; *see also* Answer, Affirmative Defenses, and Counterclaim, ¶ 6, at 3; ¶ 6, at 12.

or resignation.[4] On the same date, Lauer also executed a Confidentiality Policy, recognizing the value of the company's sales methods, techniques, customer lists, and agreeing not to use or disclose any of the information within the scope of the Confidentiality. Policy.[5] According to Control Center, Lauer also agreed to additional terms and conditions of employment, including a covenant not to disclose Control Center's proprietary information, a promise to hold the business information of Control Center in confidence, and an agreement not to take away employees or customers from the company.[6] The Complaint also states that Lauer agreed to subordinate his own personal interest to those of Control Center when dealing with Control Center suppliers, customers, creditors, and other persons doing business with, seeking to do business with, or in competition with, the company.[7]

On April 15, 2002, Control Center filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Middle District of Florida. Shortly thereafter, on or about May 31, 2002, Lauer was terminated.[8]

On June 5, 2002, Control Center, in its capacity as a debtor-in-possession, brought an adversary action against Lauer, requesting injunctive relief under the Florida Uniform Trade Secrets Act (Count I); injunctive relief enforcing the Sales Representative Agreement between Control Center and Lauer (Count II); injunctive relief upholding Control Center's Confidentiality Policy (Count III); injunctive relief upholding Control Center's employment terms and conditions (Count IV); damages for conversion (Count V); and damages under the Florida Uniform Trade Secrets Act. (Count VI).[9]

This adversary action stems from Lauer's alleged violations of agreements with Control Center.[10] Specifically, Control Center contends that Lauer: (1) aligned himself with persons or entities in competition with Control Center; [11] (2) refused to deal with Control Center suppliers, customers, creditors, and other persons or entities in an impartial manner; [12] (3) delayed orders and intentionally failed to secure business for Control Center; [13] and (4) disclosed privileged and confidential information about Control Center.[14] The Complaint also states that after his termination, Lauer improperly exercised dominion and control over a portable computer containing confidential and proprietary information belonging to Control Center.[15]

After receiving service of the Complaint, Lauer filed an answer, affirmative defenses, and a counterclaim [16] alleging that Control Center defamed him through releasing

---

**4.** *See id.,* ¶ 7, at 2; *see also* Answer, Affirmative Defenses, and Counterclaim, ¶ 7, at 3; Complaint, Ex. A.

**5.** *See id.,* ¶ 8, at 3; *see also* Answer, Affirmative Defenses, and Counterclaim, ¶ 8, at 3; Complaint Ex. B.

**6.** *See id.,* ¶ 9, at 3; *see also* Complaint, Ex. C.

**7.** *See id.,* ¶ 10, at 3; Ex. D.

**8.** *See id.,* ¶ 14, at 4; *see also* Answer, Affirmative Defenses, and Counterclaim, ¶ 6, at 12.

**9.** *See generally id.*

**10.** *See id.,* ¶ 11, at 4.

**11.** *See id.*

**12.** *See id.*

**13.** *See id.,* ¶ 12, at 4.

**14.** *See id.,* ¶ 13, at 4.

**15.** *See id.,* ¶ 15, at 4.

**16.** *See generally* Answer, Affirmative Defenses, and Counterclaim.

and disseminating false information concerning his employment at Control Center, including an allegation that he committed grand theft during his tenure.[17]

Lauer has now filed this motion pursuant to Rule 5011(a) of the Federal Rules of Bankruptcy Procedure,[18] requesting that this Court withdraw reference of this adversary proceeding from the bankruptcy court, and transfer the matter to the district court.[19] Lauer's primary argument in support of his motion is that he is entitled to a trial by jury in a U.S. District Court on all issues so triable.[20]

### III. STANDARD OF REVIEW

Article III, Section One, of the United States Constitution provides that the "judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish," and that the "Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."

It is well established that while district courts are Article III courts, bankruptcy courts are not. *See In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, 538 (11th Cir.1991) ("bankruptcy courts are not Article III courts and therefore may not exercise the judicial power of the United States"). Indeed, bankruptcy judges serve fourteen-year terms, are removable for cause, and enjoy no protection from salary cuts. *See* 28 U.S.C. § 152(a)(1),(e). Consequently, in *Northern Pipeline*

*Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), a plurality of the United States Supreme Court concluded that the portion of the Bankruptcy Reform Act of 1978 conferring bankruptcy courts with jurisdiction over all cases arising under or related to the bankruptcy code was unconstitutional, insofar as such jurisdiction allowed a bankruptcy court to hear a debtor's prepetition state law contract claim where the party against which the claim was asserted had not filed a claim in the proceeding. *See generally id.* The Court held that "the inexorable command of [Article III, § 1] is clear and definite: The Judicial Power of the United States must be exercised by courts having the attributes prescribed in Art. III." *Id.* at 57–58, 102 S.Ct. 2858.

In response to the *Northern Pipeline* decision, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, at 537. That Act amended the Bankruptcy Act of 1978 by vesting original jurisdiction over bankruptcy cases and proceedings in the district courts. *See* 28 U.S.C. § 1334(a). Bankruptcy courts now obtain jurisdiction over cases and proceedings under the Bankruptcy Code only by referral at the discretion of the district courts. *See* 28 U.S.C. § 157(a). This statutory scheme ensures that "the judicial power of the United States will be ultimately exercised by an Article III Court." *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, at 538.

Because the jurisdiction of a bankruptcy court is obtained only by referral, a district court may, for cause, withdraw the

---

17. *See id.,* ¶ 13, at 13.

18. Rule 5011(a) of the Federal Rules of Bankruptcy Procedure provides that a "motion for withdrawal of a case or proceeding shall be heard by a district judge."

19. *See generally* Doc. No. 3.

20. *See id.* at 2–4.

reference of a case or proceeding in bankruptcy under 28 U.S.C. § 157(d). That statute provides, in pertinent part:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.[21]

■■■■ Although Congress has not provided a statutory definition of the word "cause", the Eleventh Circuit has determined that is not "an empty requirement." *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532, at 536. Thus, when making a determination of whether sufficient cause exists, a district court should consider the advancement of uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process. *See Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 742 (11th Cir.2000) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir.1985)). Additional factors include: (1) whether the claim is core or non-core; (2) efficient use of judicial resources; (3) a jury demand; and (4) prevention of delay. *See Hvide Marine Towing, Inc. v. Kimbrell (In re Hvide Marine Towing, Inc.)*, 248 B.R. 841, 844 (M.D.Fla.2000); *TPI Int'l Airways v. FAA (In re TPI Int'l Airways)*, 222 B.R. 663, 668 (S.D.Ga.1998). While important, none of the aforementioned factors should prevent a district court "from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court or in order to fulfill its supervisor function over the bankruptcy courts." *In re Parklane/Atlanta Joint Venture*, 927 F.2d 532 at 538.

## IV. LEGAL ANALYSIS

### A. GENERALLY

In analyzing Lauer's Motion to Withdraw Reference and for Transfer to District Court (Doc. No. 3), this Court will consider two factors: (1) whether the claims made in this adversary proceeding are core or non-core; and (2) whether Lauer is entitled to a jury trial pursuant to the Seventh Amendment of the United States Constitution on any of the claims asserted.

### B. WHETHER THE CLAIMS IN THIS ADVERSARY PROCEEDING ARE CORE OR NON–CORE

#### 1. GENERALLY

■■ In order to avoid the constitutional problems discussed by the Supreme Court in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress created the distinction between core and non-core bankruptcy proceedings. *See Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1347 (11th Cir.1999). If a proceeding is core, then the district court applies traditional standards of appellate review to the bankruptcy court's findings. *See id.; see also* 28 U.S.C. § 158(a); Fed. R. Bankr.P. 8013[22]. Conversely, if a proceeding is non-core, then the bankruptcy court is permitted only to submit proposed findings of facts and conclusions of law subject to de novo review by a district

---

**21.** Section 157(d) also provides for mandatory withdrawal "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organization or activities affecting interstate commerce."

In this instance, consideration of non-bankruptcy federal law is unnecessary. Accordingly, this Court need not address the possibility of mandatory withdrawal.

**22.** Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that on "an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceed-

court. *See id.; see also* 28 U.S.C. 157(c)(1); Fed. R. Bankr.P. 9033(d).[23] Since a district court is obligated to review de novo the findings of a bankruptcy court on non-core matters, a determination that a proceeding is non-core weighs in favor of transferring the matter to a district court.

## 2. DISTINGUISHING BETWEEN CORE AND NON–CORE PROCEEDINGS

■ In order to determine if the claims made in this adversary proceeding are core or non-core, this Court must first look to 28 U.S.C. § 157[24], the statute governing the judicial procedures of the bankruptcy courts.

28 U.S.C. § 157(b)(2) lists fourteen types of actions that Congress considers core proceedings.[25] Control Center argues that three of those actions are relevant: § 157(b)(2)(A) which incorporates "matters concerning the administration of the estate"; § 157(b)(2)(E) which incorporates "orders to turn over property of the estate"; and § 157(b)(2)(O), a catch-all provi-

---

ings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

**23.** Rule 9033(d) of the Federal Rules of Bankruptcy Procedure provides for the standard of review of proposed findings of fact and conclusions of law in a non-core proceeding.

Standard of review. The district judge shall make a de novo review upon the record ... of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

**24.** This Court recognizes that 28 U.S.C. § 157(b)(3) provides, in relevant part, that the "bankruptcy judge shall determine on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." *See also Hvide Marine Towing, Inc. v. Kimbrell (In re Hvide Marine, Inc.),* 248 B.R. 841, 845 n. 5 (M.D.Fla.2000) ("Whether the claim is core or non-core is a determination that should first be made by the bankruptcy court"). In this adversary proceeding, however, the record reflects that no such determination has been made. Accordingly, in the interests of judicial efficiency, this Court will make the core/non-core determination.

**25.** (2) Core proceedings include, but are not limited to—

(a) matters concerning the administration of the estate;

(b) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan ... but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11 ...

(c) counterclaims by the estate against persons filing claims against the estate;

(d) orders in respect to obtaining credit;

(e) orders to turn over property of the estate;

(f) proceedings to determine, avoid, or recover preferences;

(g) motions to terminate, annul, or modify the automatic stay;

(h) proceedings to determine, avoid, or recover fraudulent conveyances;

(i) determination as to the dischargeability of particular debts;

(j) objections to discharges;

(k) determinations of the validity, extent, or priority of liens;

(l) confirmations of plans;

(m) orders approving the use or lease of property, including the use of cash collateral;

(n) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate ...

sion incorporating "all other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." *See* Doc. No. 2., ¶ 10, at 3.

After analyzing Control Center's Complaint and Lauer's Counterclaim, this Court finds that only Control Center's claim for conversion (Count V) falls within the core actions delineated in 28 U.S.C. § 157(b)(2). To the extent that Control Center seeks a return of the company's portable computer and the confidential information contained on that computer, this action is equivalent to an action to turn over property of the bankruptcy estate. *See* § 157(b)(2)(E). Moreover, because the conversion claim seeks to obtain property of Control Center, the action necessarily involves a determination of the nature and extent of property in the company's estate, a matter concerning the administration of the estate. *See* § 157(b)(2)(A).

With respect to the catch-all provision cited by Control Center, while the claims in this adversary proceeding could conceivably result in a damage award affecting Control Center's debtor-creditor relationships and the company's reorganization plan, if this Court found core jurisdiction on that basis, then virtually any claim would entitle a bankruptcy court to enter final judgment. *See Marill Alarm Systems, Inc., v. Equity Funding Corp (In re Marill Alarm Systems, Inc.)*, 81 B.R. 119, 123 (S.D.Fla.1987) *aff'd without opinion,* 861 F.2d 725 (11th Cir.1988). This Court finds that such a broad construction of § 157 would "ignore the constitutional proscription" limiting the jurisdiction of bankruptcy courts as set forth by the Supreme Court in *Northern Pipeline. Id.*

Notwithstanding the aforementioned interpretation, because the list provided in § 157 is not all-encompassing, this Court's inquiry does not end here. *See* 28 U.S.C. § 157(b)(2) ("Core proceedings include, but are not limited to"). Instead, additional analysis is necessary to determine if the claims for breach of contract, defamation, and violations of Florida's Uniform Trade Secrets Act are core or non-core.

Under 28 United States Code, Section 157, core proceedings are the equivalent to those "arising under title 11 or arising in a case under title 11," while "non-core" proceedings are synonymous with those "otherwise related" to the bankruptcy estate. *Cont'l Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1349 (11th Cir.1999) (interpreting subsection (b)(1) and (c)(1) of 28 U.S.C. § 157).

■ The Eleventh Circuit has indicated that these phrases ("arising under" and "arising in") are "helpful indicators" of what constitutes a core or non-core proceeding. *Id.* " 'Arising under' means that a proceeding invokes a cause of action, or substantive right, created by a specific section of the Bankruptcy Code." *Id.* " 'Arising in' describes administrative matters unique to the management of a bankruptcy case." *Id.* This being the case

[i]f the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantial right created by the federal bankruptcy law and is one that could exist outside of bankruptcy is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under

157(c)(1) it is "otherwise related" or a non-core proceeding.

*Id.* at 1348 (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987) and referring to the decision as the "most helpful explanation of what is a core proceeding").

From the face of the pleadings, it is manifest that all of the remaining claims between Control Center and Lauer do not involve a substantial right created by federal bankruptcy law. Indeed, the actions for beach of contract, defamation, and trademark misappropriation under Florida's Uniform Trade Secrets Act are independent of both the bankruptcy code any other federal law. Moreover, this proceeding is not one which could arise only in the context of a bankruptcy proceeding. Had there been no bankruptcy, this action could have proceeded in a state court, and would be virtually identical to this action despite Control Center's reorganization. Accordingly, this Court finds that with the exception of the conversion claim, the adversary proceeding between Control Center and Lauer involves non-core claims, a factor that weighs in favor of transferring this action to the district court. *See Cmty. Bank v. Boone (In re Boone),* 52 F.3d 958, 961 (11th Cir.1995) (rejecting an argument that the plaintiffs' role as debtors in a chapter 7 case made their tortious interference claim against defendant-bank a core proceeding); *Key Bank, U.S.A. v. First Union Nat'l Bank,* 234 B.R. 827, 832 (M.D.Fla.1999) (recognizing that suits based on Fla. Stat. ch. 673 and 674 are state created rights, and therefore, not core proceedings); *Marill Alarm Systems, Inc., v. Equity Funding Corporation (In re Marill Alarm Systems, Inc.),* 81 B.R. 119, 122–123 (S.D.Fla.1987), *aff'd without op.,* 861 F.2d 725 (11th Cir.1988) (finding that debtor's lawsuit against defendant, alleging a scheme to collect usurious interest in violation of Fla. Stat. ch. 687 and a

Florida RICO statute, was not a core proceeding under Title 11 of the bankruptcy code); *First Florida Building Corp. v. Employers Ins. of Wausau (In re Shafer & Miller Indus., Inc.),* 66 B.R. 578, 580 (S.D.Fla.1986) (holding that debtors' breach of contract action against defendant for failing to perform an electrical contract was a non-core proceeding because a "state-created right to recover damages for breach of contract, even though such damages would ultimately enhance the debtor's estate, did not transform what is essentially a private right into a public right ... [P]rivate rights must be finally adjudicated by Article III judges"); *Naturally Beautiful Nails, Inc. v. Wal–Mart Stores, Inc. (In re Naturally Beautiful Nails, Inc.),* 252 B.R. 574 (Bankr.M.D.Fla. 2000) (recognizing that claims for breach of contract, fraud in the inducement, and conversion are non-core proceedings).

## C. WHETHER THE PARTIES ARE ENTITLED TO A JURY TRIAL ON THEIR CLAIMS

### 1. GENERALLY

The right to a jury trial is governed by the Seventh Amendment of the United States Constitution, which provides, in pertinent part:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.

Pursuant to the Seventh Amendment, the Supreme Court has formulated a two prong test for determining if a litigant is entitled to a jury trial. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). First, a district court must compare the "action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* (quoting

*Tull v. United States*, 481 U.S. 412, 417–418, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)). Second, a court must "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* "The second stage of this analysis is more important than the first." *Id.*

Since four of Control Center's claims seek only equitable relief, no analysis is required with respect to the claims for injunctive relief under the Florida Uniform Trade Secrets Act (Count I); injunctive relief to enforce Control Center's and Lauer's Sales Representative Agreement (Count II); injunctive relief to uphold Control Center's Confidentiality Policy (Count III); and injunctive relief to uphold Control Center's employment terms and conditions (Count IV). This leaves the Court with Control Center's claims for conversion (Count V) and damages under Florida's Uniform Trade Secrets Act (Count VII), and Lauer's counterclaim for defamation (Count I).

▆▆ The United States Supreme Court has long recognized that, as a general rule, monetary relief is legal in nature, and that claims for such relief give rise to a right to trial by jury. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998). Moreover, the Supreme Court has recognized that the Seventh Amendment entitles parties "to a jury trial in actions for damages to a person or property, for libel and slander, for recovery of land, and for conversion of personal property." *Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). In this instance, all of the remaining claims seek monetary relief. In addition, two of the remaining claims (defamation and conversion) fall within the Supreme Court's register of actions that traditionally entitle a party to a jury trial. Finally, the action seeking damages for the misappropriation of Control Center's trade secrets is clearly legal in nature. *See LinkCo, Inc. v. Fujitsu, Ltd.*, 232 F.Supp.2d 182, 192 (S.D.N.Y. 2002) ("Where a plaintiff seeks damages for trade secret misappropriation, rather than equitable relief, the claim is essentially legal in nature"); *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 891 F.Supp. 935, 943 (S.D.N.Y.1995) ("plaintiff's claim for damages for trade secret misappropriation is essentially legal in nature"); *Nat'l Automatic Sprinkler Indus. Welfare and Pensions Fund v. Hopper*, 1986 U.S. Dist. Lexis 15858, *9 (E.D.Mich. Dec. 30, 1986) ("seeking damages for copyright infringement and misappropriation of trade secrets ... involve[s] legal issues triable by a jury"); *Inland Steel Products Co. v. MPH Mfg. Corp.*, 25 F.R.D. 238, 243 (N.D.Ill.1959) ("The issues raised by the defendants' counterclaim, which seeks damages for alleged appropriation of a trade secret ... are clearly legal in nature"). Thus, this Court finds that Lauer has a Seventh Amendment right to trial by jury on his defamation claim (Count I), Control Center's claim for conversion (Count V) and Control Center's claim for damages under Florida's Uniform Trade Secrets Act (Count VI).[26]

**26.** The fact that Control Center's legal claims are joined with equitable claims does not complicate this Court's analysis since the Supreme Court has determined that if a "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis v. Loether*, 415 U.S. 189, 196 n. 10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (internal citations omitted). Indeed, the right to a jury "cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." *Tull v. U.S.*, 481 U.S. 412, 425, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); *Burns v. Lawther*, 53 F.3d 1237, 1242 (11th Cir.1995) ("When legal and equitable

## 2. THE SIGNIFICANCE OF FINDING A RIGHT TO A JURY TRIAL

 Pursuant to 28 U.S.C. § 157(e), jury trials are permitted in bankruptcy courts only where all of the parties in the matter have consented.[27] Therefore, unless Lauer consents to trial by jury before the bankruptcy court, or in the alternative, Lauer waived his right to a jury trial by filing a counterclaim, this matter must be transferred to the district court.[28] Additionally, regardless of whether this Court finds that the bankruptcy court has the authority to conduct a jury trial over this adversary proceeding, Lauer's claim for defamation must be tried in a district court, since a district court is required to order that personal injury tort and wrongful death claims be tried in a district court. *See* 28 U.S.C. § 157(b)(5).

## 3. WAIVING THE RIGHT TO A JURY TRIAL

### (i) Generally

 In *Granfinanciera v. Nordberg,* 492 U.S. 33, 59, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the United States Supreme Court restricted a party's Seventh Amendment right to a jury trial in the

---

claims are joined in the same action, the right to jury trial on the legal claims, including all issues common to both claims, remains intact"); *see also Wall v. Trust Co. of Ga.,* 946 F.2d 805, 808 n. 1 (11th Cir.1991) (accord).

**27.** *See* 28 U.S.C. § 157(e)

If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specifically designed to exercise such jurisdiction by the district court and with the express consent of all the parties.

**28.** This Court also notes that in addition to the lack of consent, another problem that arises when a bankruptcy court conducts a jury trial in non-core proceedings is the standard of review.

When a bankruptcy judge is presiding over a case under title 11 or a core proceeding arising under title 11, he or she may enter appropriate orders and judgments, subject to traditional appellate review by the district court. *See Con't Nat'l Bank v. Sanchez (In re Toledo),* 170 F.3d 1340, 1347 (11th Cir.1999). The standard for review is set out in Bankruptcy Rule 8013, which provides that:

On an appeal, the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Conversely, when a bankruptcy judge is hearing a proceeding that is not a core proceeding, he or she may issue only "proposed findings of fact and conclusions of law" all of which are subject to de novo review by the district court when a party timely and specifically objects to the findings 28 U.S.C. § 157(c)(1).

On account of this de novo review, many courts that have considered the question, have concluded that where a litigant has a right to a jury trial involving a non-core matter, as the litigants do in this case, the proceeding must be tried before a district judge. To hold otherwise would violate the reexamination clause of the Seventh Amendment of the United States Constitution, which provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." *See, e.g., Naturally Beautiful Nails, Inc. v. Wal–Mart Stores, Inc. (In re Naturally Beautiful Nails, Inc.),* 252 B.R. 574, 576 (Bankr.M.D.Fla.2000) ("the Constitution prohibits trial by jury in a non-core or related matters");

Because a district court's de novo review of a bankruptcy court's findings on all non-core matters is incompatible with the reexamination clause of the Seventh Amendment, this Court finds grave problems with that standard of review. Nevertheless, because the parties have not consented to trial by jury in the bankruptcy court, this Court need not visit that issue.

context of a bankruptcy proceeding holding:

> By submitting a claim [29] against the bankruptcy estate, creditors subject themselves to the [bankruptcy] court's equitable power to disallow those claims, even though the debtor's opposing counterclaims [asserted in response to an adversary proceeding initiated by a trustee] are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate.

In *Langenkamp v. Culp*, 498 U.S. 42, 44–45, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), the Supreme Court reaffirmed this decision, stating:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate, the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, the action becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*. As such, there is no Seventh Amendment right to a jury trial. If a party does not submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial. Accordingly, a creditors right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate.

(internal citations and quotations omitted).

By virtue of these holdings, several district and bankruptcy courts have disagreed about whether parties who assert counterclaims against a debtor in bankruptcy court, without filing proofs of claim, waive their Seventh Amendment rights to a jury trial. *See NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 911 (D.Del.1996).

To date, a small minority of courts have concluded that a defendant does not relinquish the Seventh Amendment right to a jury trial by submitting a counterclaim in a bankruptcy proceeding, unless the submission clearly evidences a voluntary and intentional relinquishment of that right. *See, e.g., Beard v. Braunstein*, 914 F.2d 434, 442 (3d Cir.1990) (holding that tenant's compulsory counterclaim seeking relief for damages caused by poor condition of rental property, filed in response to an adversary proceeding brought to collect unpaid rent, should not effect a waiver of a right to a jury trial because filing was involuntary); *NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 913 (D.Del.1996) (holding that counterclaim for breach of contract and negligent misrepresentation filed in response to an adversary proceeding alleging breach of

---

29. Under the United States Bankruptcy Code, 11 U.S.C. § 101(5), the term claim is defined very broadly to include:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

contract did not constitute a waiver because it "would not serve justice to find that even though a party has affirmatively and timely asserted its Seventh Amendment right to a trial by jury, it nevertheless implicitly waived that right by bringing counterclaims that arose out of the same occurrence or transaction as the claims asserted against it"); *Cf. Hays v. Equitex, Inc. (In re RDM Sports Group, Inc.)*, 260 B.R. 915, 924–25 (Bankr.N.D.Ga. 2001) (refusing to extend waiver principles articulated by the Supreme Court in *Langenkamp and Granfinanciera* to adversary proceeding alleging common law claims for breach of fiduciary duty, legal malpractice, negligence, and civil conspiracy because right to a jury trial on common law claims is constitutionally protected). These courts have adopted what has come to be referred to as the "waiver theory." *See NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 910 (D.Del. 1996) (discussing "waiver theory").

In the converse, an overwhelming majority of courts have determined that parties who file counterclaims, whether permissive or compulsory, trigger the bankruptcy court's process of allowance and disallowance of claims, thereby subjecting themselves to the equitable power of a bankruptcy court, waiving their Seventh Amendment right to a jury trial. *See, e.g., Leshin v. Welt (In re Warmus)*, 276 B.R. 688, 693–94 (S.D.Fla.2002) (affirming decision to strike jury demand where defendant filed compulsory counterclaim in response to an adversary proceeding because counterclaim sought damages from the bankruptcy estate, and therefore, was akin to the filing of a claim); *Murray v. Richmond Steel & Welding Co. (In re Hudson)*, 170 B.R. 868, 874–875 (E.D.N.C.1994) (finding "the defendant's filing of a counterclaim caused the defendant to lose its Seventh Amendment right to a jury trial" regard-

less of whether the counterclaim was compulsory or permissive because the waiver rationale is inapplicable in the context of a bankruptcy proceeding); *Segal v. Cal. Energy Dev. Corp.*, 167 B.R. 667, 672 (D.Utah 1994) (holding that regardless of the compulsory nature of a counterclaim, a defendant loses its right to a jury trial by filing a counterclaim against an estate by virtue of the bankruptcy court's possession of the estate and its equitable power to allow or disallow claims made against the estate); *Peachtree Lane Assocs., Ltd. v. Granader*, 175 B.R. 232, 236–237 (N.D.Ill.1994) (joining other courts in consensus that filing a counterclaim in an adversary proceeding, whether it be permissive or compulsory, deprives a party of their right to a jury trial); *Allied Cos., Inc. v. Holly Farms Foods, Inc. (In re Allied Cos., Inc.)* 137 B.R. 919, 924–25 (S.D.Ind.1991) (finding that mandatory nature of compulsory counterclaim is insignificant in analyzing whether or not a right to a jury trial exists because the claim invokes equitable jurisdiction of bankruptcy court, where no jury is required by the Seventh Amendment); *Schwinn Plan Committee v. AFS Cycle & Co. Ltd. (In re Schwinn Bicycle Co.)*, 184 B.R. 945, 953 (Bankr.N.D.Ill.1995) (holding that filing of compulsory counterclaim placed defendant in equitable jurisdiction of bankruptcy court, eliminating right to jury trial); *Cf. Georgia Neurosurgical Profit Sharing Plan v. Rudow (In re Robin Hood, Inc.)*, 192 B.R. 124 (W.D.N.C.1995) (recognizing that when "a creditor files a counterclaim against a debtor in response to an adversary proceeding brought in bankruptcy court, he has succumbed to the jurisdiction of that court and waived his right to a jury trial"); *Rushton v. Philadelphia Forest Prods., Inc. (In re Americana Express-*

*ways, Inc.),* 161 B.R. 707, 714 n. 12 (D.Utah 1993) (holding that defendant's filing of a permissive counterclaim in an adversary proceeding eliminated Seventh Amendment right to a jury trial); *Shields v. Ciccone (In re Lloyd Secs., Inc.),* 156 B.R. 750, 755 (Bankr.E.D.Pa. 1993) (finding that a mere attempt to invoke a bankruptcy court's "claims resolution process through assertion of a non-compulsory counterclaim, whether successful or not, is a sufficient act on the part of a creditor to eliminate its right to a jury trial, because no such right exists in that process"); *Bayless v. Crabtree,* 108 B.R. 299, 305 (W.D.Okla.1989) (holding that by filing a permissive counterclaim, defendants submitted to equitable jurisdiction of the bankruptcy court, losing entitlement to jury trial); *Anderson v. Simchon (In re Southern Textile Knitters, Inc.),* 236 B.R. 207, 210 (Bankr.S.C. 1999) (finding that filing a counterclaim in general is within the type of claims which eliminate the necessity for a jury trial under *Granfinanciera* and *Langenkamp* ); *Beverage Enters. v. Hornell Brewing Co., Inc. (In re Pocono Springs Co.),* 1997 WL 695617, *2–*3, 1997 Bankr.Lexis 1750, *6–*8 (Bankr.E.D.Pa. Nov. 6, 1997) (declining to recognize right to jury trial because filing a counterclaim that is permissive under the bankruptcy rules is the equivalent to filing a proof of claim).

These courts, for the most part, have adopted what has come to be referred to as the "conversion theory." *NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.),* 203 B.R. 905, 910 (D.Del.1996). Under the conversion theory, the concept of waiver is inapplicable, and instead the focus is on the disputed res to which the defendant lays claim. *See id.* When a counterclaim seeking monetary relief is entered in an adversary proceeding the claim is automatically converted from "a legal dispute over money into an equitable dispute over a share of the estate." *Id.* Thus, the defendant does not "lose its right to a jury trial by filing a counterclaim and thereby waiving the right." *Murray v. Richmond Steel and Welding Co. (In re Hudson),* 170 B.R. 868, 875 (E.D.N.C.1994). Instead, the defendant loses "its right to a jury trial by filing a counterclaim and thereby seeking a piece of the disputed res, the debtors' estate, which [is] subject to the bankruptcy court's equitable power to allow and disallow claims." *Id.* This is the result obtained regardless of whether the counterclaim is permissive or compulsory, because the defendant's filing represents an "attempt to obtain a portion of the debtor's estate," triggering the non-jury, public rights "process of allowing and disallowing claims in bankruptcy court." *Id.* at 875.

### (ii) Analysis:

Regardless of whether the "waiver theory" or "conversion theory" applies, this Court finds that Lauer's Seventh Amendment right to a jury trial remains intact.

### (a) The Result Obtained Under the Waiver Theory:

Under the "waiver theory," it is manifest that Lauer did not relinquish his Seventh Amendment right to trial by jury. This Court reaches this conclusion on account of three reasons.

Foremost, Lauer affirmatively and timely asserted his Seventh Amendment right to a jury trial in his motion to withdraw on September 20, 2002 (Doc. No. 1), the same day on which he filed his answer, affirmative defenses, and counterclaim. This assertion weighs against a finding of waiver in light of the Supreme Court's indication that a waiver is ordinarily an intentional relinquishment of a known right or privi-

lege,[30] and the Eleventh Circuit's recognition that "because the right to a jury is fundamental, courts must indulge every reasonable presumption against waiver." *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir.1995). "The right to a jury trial 'shall be preserved ... inviolate', and a court's discretion 'is very narrowly limited and must, whenever possible be exercised to preserve jury trial.'" *Borgh v. Gentry*, 953 F.2d 1309, 1311 (11th Cir.1992).

In addition, in accordance with Bankruptcy Rule of Procedure 7008(a)[31], Lauer made it clear that by filing an answer, affirmative defenses, and counterclaim in this non-core adversary proceeding, he is not consenting to the bankruptcy court's issuance of final orders or judgments. *See* Answer, Affirmative Defenses, and Counterclaim, ¶ 4, at 2–3. This is significant because when a bankruptcy court lacks the authority to issue final orders or judgments, 28 U.S.C. § 157(c)(1) requires a district court to review de novo all objections to the proceedings. The requirement of de novo review is problematic in the context of a jury trial because the Seventh Amendment's reexamination clause prohibits any fact found by a jury from being reviewed de novo. *See, e.g., Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures, Corp.)*, 4 F.3d 1095, 1101 (2nd Cir.1993) (holding that the Seventh Amendment to the Constitution "prohibits bankruptcy courts from holding jury trials in non-core matters"); *Beard v. Braunstein*, 914 F.2d 434, 443 (3rd Cir.1990) ("By the Seventh Amendment, any fact found by a jury cannot be reviewed de novo. Accordingly, a bankruptcy court cannot conduct a jury trial in a non-core proceeding"); *Taxel v. Electronic Sports Research (In re Cinematronics)*, 916 F.2d 1444, 1451 (9th Cir.1990) (finding that "grave Seventh Amendment problems would arise if a jury trial is conducted by the bankruptcy court [since] section 157(c)(1) requires *de novo* review by the district court of non-core matters"); *Ellenberg v. Bouldin (In re Bouldin)*, 125 B.R. 851, 855 (N.D.Ga.1991) ("the Seventh Amendment would be violated where a district court reviews de novo the verdict of a jury trial conduct by a bankruptcy court in a non-core proceeding"); *Naturally Beautiful Nails, Inc. v. Wal–Mart Stores, Inc. (In re Naturally Beautiful Nails, Inc.)*, 252 B.R. 574, 576 (Bankr.M.D.Fla.2000) ("the Constitution prohibits trial by jury in a non-core or related matters"); *Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.)*, 132 B.R. 979, 980 (Bankr.S.D.Ga.1991) ("The Seventh Amendment's prohibition against a de novo review of the jury's findings and § 157(c)(1)'s requirement that the bankruptcy court's findings in non-core proceedings be reviewed de novo by the district court are incompatible. Accordingly, the bankruptcy court, absent consent of the parties, may not conduct a jury trial in a non-core proceeding").

Finally, this Court finds that Lauer's

---

**30.** *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

**31.** Rule 7008 of the Federal Rules of Bankruptcy Procedure provides:

(a) Applicability of Rule 8 F.R.Civ.P. Rule 8 F.R.Civ.P. applies in adversary proceedings. The allegation of jurisdiction required by Rule 8(a) shall also contain a reference to the name, number, and chapter of the case under the Code to which the adversary proceeding relates and to the district and division where the case under the Code is pending. In an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core, and if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge.

counterclaim was compulsory in nature [32], and therefore, not at all, indicative of Lauer's desire to submit the equity jurisdiction of the bankruptcy court. *See Beard v. Braunstein*, 914 F.2d 434, 442 (3d Cir.1990) (holding that implying a waiver

of the Seventh Amendment right to trial by jury where a defendant files a compulsory counterclaim in response to an adversary proceeding is something less than fair play). Indeed, if Lauer failed to assert his counterclaim in this action, he would later

**32.** Rule 13(a) of the Federal Rules of Civil Procedure governs counterclaims filed in federal court. That rule provides, in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

"For the purposes of Rule 13(a), transaction is a word of flexible meaning," encompassing "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Alexander v. Fulton County*, 207 F.3d 1303, 1323 (11th Cir.2000). "Accordingly, all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* "A logical relationship exists when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant." *U.S. v. Eckerd Corp.*, 184 F.R.D. 686, 687 (M.D.Fla.1999) (quoting *Plant v. Blazer Fin. Serv.*, 598 F.2d 1357 (5th Cir.1979)). "This is a loose standard, which permits a broad realistic interpretation in the interests of avoiding a multiplicity of suits." *Id.*

Applying the aforementioned standards to this adversary proceeding, the Court finds that Lauer's defamation claim arises out of the same transaction or occurrence as the claims alleged in Control Center's Complaint. In Count V of its Complaint, Control Center alleges that Lauer converted its property. *See* Complaint, ¶ 51, at 11. In response, Lauer alleges that Control Center caused false and defamatory information, that he committed grand theft while employed at Control Center, to be publicly released and disseminated. *See* Answer, Affirmative Defenses, and Counterclaim, ¶ 13, at 13. Under the flexible standard applied to Rule 13(a) analysis, Lauer's claim of defamation clearly arises out of the same occurrence as the claim alleged by Control Center. The same operative facts which gave rise to Control Center's claim of conversion, later gave rise to Lauer's claim for defamation.

Notwithstanding this finding, in the context of an adversary proceeding before a bankruptcy judge, Rule 7013 of the Federal Rules of Procedure modifies Rule 13(a) with respect to counterclaims filed against a debtor-in-possession that arose pre-petition. That rule provides, in pertinent part:

> Rule 13 F.R.Civ.P. applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief.

Accordingly, a counterclaim brought in an adversary proceeding is compulsory only if the claim arose after the initiation of bankruptcy proceedings. *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1249 n. 10 (3d Cir.1994) ("under Bankruptcy rule 7013, it is compulsory for a party sued by the trustee to bring any counterclaims that arose post-petition"), *cert denied*, 513 U.S. 999, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994); *Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 594 (2nd Cir.1991) (recognizing that the compulsory counterclaim rule in Fed. R.Civ.P. 13(a) is inoperative with respect to claims arising before bankruptcy proceedings were initiated); *NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 909 (D.Del. 1996) (collecting cases).

This rule does not change this Court's analysis. Control Center filed for chapter 11 bankruptcy relief on April 15, 2002. Lauer's claim for defamation arose after his termination on or about May 31, 2002. *See* Answer, Affirmative Defenses, and Counterclaim ¶ 13, at 13. Therefore, since his claim arose post-petition, it is compulsory under both the Federal Rules of Civil Procedure, and the Bankruptcy Rules.

be barred from bringing the action. *See Nippon Credit Bank, Ltd. v. Matthews,* 291 F.3d 738, 755 (11th Cir.2002) ("Compulsory counterclaims which are not brought are 'thereafter barred' "). For this reason, "it would not serve justice to find that even though a party has affirmatively and timely asserted its Seventh Amendment right to a trial by jury, it would nevertheless implicitly waive that right by bringing counterclaims that arose out of the same occurrence or transaction as the claims asserted against it. The constitutional right to a trial by jury is not so ephemeral". *NDEP Corp. v. Handl–It, Inc. (In re NDEP Corp.),* 203 B.R. 905, 913 (D.Del.1996).

Based on the foregoing, this Court finds that if the waiver theory is applicable to this proceeding, Lauer did not waive his Seventh Amendment right to trial by jury.

*(b) The Result Obtained Under the Conversion Theory:*

As previously discussed, the "conversion theory" is based on the *Granfinanciera* and *Langenkamp* decisions where the United States Supreme Court analyzed the claims-allowance process conducted under the equitable jurisdiction of the bankruptcy courts. These decisions support the conclusion that when a defendant files a legal claim or counterclaim against a debtor's estate, the defendant subjects itself to the equitable power of the bankruptcy court, thereby losing the right to a jury trial.

The "conversion theory" has been adopted by the majority of courts, and has been expanded to cover a variety of claims and counterclaims, including counterclaims only incidentally related to a bankruptcy proceeding, such as fraud and breach of contract actions filed in response to an adversary proceeding. *See Leshin v. Welt (In re Warmus),* 276 B.R. 688 (S.D.Fla.

2002) (divesting defendant of Seventh Amendment rights where, in response to trustee's adversary proceeding to recover proceeds from the sale of an airplane that was transferred in violation of the bankruptcy code, defendant counterclaimed with an allegation of fraud); *Murray v. Richmond Steel and Welding Co. (In re Hudson),* 170 B.R. 868 (E.D.N.C.1994) (divesting defendant of Seventh Amendment rights where, in response to Trustee's breach of contract action brought on behalf of debtors to recover $67,000 owed to the debtors under a pre-petition school construction contract, defendant counterclaimed with breach of contract action); *Segal v. Cal. Energy Dev. Corp.,* 167 B.R. 667, 672 (D.Utah 1994) (divesting defendant of Seventh Amendment right where, in response to Trustee's action alleging breach of a court approved post-petition agreement to purchase the debtors rights to develop a power project, defendant counterclaimed alleging breach of contract, fraud, negligent misrepresentation, and violations of § 10(b) and Rule 10b–5 of the Securities Exchange Act); *Peachtree Lane Assocs., Ltd. v. Granader,* 175 B.R. 232, 236–237 (N.D.Ill.1994) (divesting defendants of Seventh Amendment rights where, in response to action brought by debtors seeking a declaratory judgment determining the parties's rights under a grant of easement and seeking injunctive relief against the defendants, enjoining them from encroaching upon the debtor's property, defendant counterclaimed alleging slander of title, commercial disparagement, tortious interference, breach of easement, unfair enrichment, and violation of Texas Deceptive Trade Practices—Consumer Protection Act); *Schwinn Plan Committee v. AFS Cycle & Co. Ltd. (In re Schwinn Bicycle Co.),* 184 B.R. 945, 953 (Bankr.N.D.Ill.1995) (divesting defendant of Seventh Amendment rights where defendant, in response to an adversary action

to avoid and recover preferential transfers made pursuant to a pre-petition settlement agreement, counterclaimed alleging breach of settlement agreement).

Despite this widespread application, this Court finds that the "conversion theory" does not extend to Lauer's counterclaim for defamation. This Court reaches this conclusion for several reasons. Foremost, pursuant to 28 U.S.C. § 157(b)(2)(B), core proceedings under the bankruptcy court's jurisdiction include the "allowance and disallowance of claims against the estate or exemptions from property of the estate and estimation of claims or interests for the purposes of confirming a plan under chapter 11 ... *but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims* against the estate for purposes of distribution in a cause under title 11." (emphasis added).

In addition, § 157(b)(5) provides that a "district court *shall* order that personal injury tort and wrongful death claims *shall* be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." (emphasis added).

Defamation is a personal injury tort.[33] Accordingly, since bankruptcy courts are prohibited from trying actions involving personal injury torts, this Court finds that Lauer's counterclaim alleging defamation was never subjected to the bankruptcy court's equitable claims-allowance process. *See Busch–Provo, Ltd. v. Sloan (In re Larsen)*, 172 B.R. 988, 993 (D.Utah 1993) (finding that right to a jury trial remains in tact where the claims-allowance process is never triggered). In other words,

Lauer's legal claim for defamation was never converted into equitable claim. Thus, if the conversion theory is applicable, Lauer was not divested of his Seventh Amendment right to a jury trial.

## V. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1. Defendant's November 4, 2002 Amended Motion to Withdraw Reference and *for* Transfer to District Court (Doc. No. 3) is **GRANTED.**

2. The adversary proceeding (Adv. No. 02–173) between Control Center, L.L.C. and Lauer shall be transferred from the United States Bankruptcy Court for the Middle District of Florida to the United States District Court for the Middle District of Florida.

---

33. *See* Black's Law Dictionary 1497 (7th ed.1999) defining personal tort as a "tort involving or consisting in an injury to one's person, reputation, or feelings, as distinguished from an injury or damage to real or personal property."